CELIA A. TIBBETTS & another, trustees, *vs.* CHARLOTTE A. TOMKINSON & others.

Middlesex. January 7, 1914. — March 2, 1914.

Present: RUGG, C. J., BRALEY, SHELDON, DE COURCY, & CROSBY, JJ.

*Devise and Legacy. Equity Jurisdiction,* Bill for instructions.

A testator by the residuary article of his will created a trust for the benefit of his children, which contained this direction: "Although the periods of distribution and of partial distribution of the said trust fund . . . are different and distinct for each of my several children, due to the difference in their several ages, it is my desire, and I so direct, that my trustees use every reasonable effort to treat each of my children living at my decease, and attaining the ages as hereinbefore specified, in an equal and impartial manner, as it has been my endeavor to secure that end under the provisions of this my will." *Held,* that the general intention of the testator, thus declared, must be carried out as far as possible and must control the interpretation of minor directions, at any rate so far as these were expressed in equivocal language or were of doubtful or uncertain meaning.

In a suit in equity by a trustee for instructions the plaintiff is entitled to be instructed only as to his present duty and not as to what hereafter may become his duty.

A testator, after making in the earlier part of his will provision for his widow which he deemed ample, created a trust for the benefit of his children, which contained an express direction that in the distribution of his estate his children so far as possible should be treated in an equal and impartial manner. There was a provision that until his youngest child reached the age of twenty-one years the homestead and "all fixtures and furnishings thereof" should not be included in the trust fund. There was another provision that when any child reached the age of twenty-five years, such child should receive outright one half of his share of the trust fund and that the other half of his share should be set apart for him. There was still another provision that such part of the income or principal of the trust fund as should be necessary for the maintenance and support of the homestead and the use and enjoyment thereof by the testator's widow and children and for the support and education of his children until they respectively should "attain the age of twenty-five years" should be used for those purposes. When the oldest child reached the age of twenty-five years, two children of the testator still were minors and, under the terms of the will, the homestead and its "fixtures and furnishings" were excluded from the trust fund of which the oldest child was to receive his share. In a suit in equity by the trustee for instructions, it was *held,* that nothing should be deducted from the trust fund, before giving the oldest child his share of it, under the provision for the maintenance of the homestead and the support and education of the other children; because the declared purpose of the testator to make so far as possible an equal distribution of the residue of his estate among his children required this interpretation of the somewhat ambiguous provision in regard to such maintenance and support.

BILL IN EQUITY, filed in the Supreme Judicial Court on November 17, 1913, by the trustees under the will of Henry L. Tibbetts, late of Lowell, who died on March 21, 1908, for instructions as to a distribution to be made under the twenty-first article of the will disposing of the residue of the testator's estate.

The case was heard upon the bill and answers by *Sheldon, J.*, who at the request of all the parties reserved it for determination by the full court.

Henry L. Tibbetts at his death left as his widow Celia Adele Tibbetts, and, as his only next of kin, a daughter, Charlotte A. Tibbetts, afterwards by marriage Charlotte A. Tomkinson, who was born on July 28, 1888, an adopted daughter, Agnes I. Tibbetts, afterwards by marriage Agnes I. Owens, who was born on December 8, 1890, a son, Norris L. Tibbetts, who was born on June 4, 1893, and a son, Howard L. Tibbetts, who was born on March 29, 1897.

These four children of the testator all were living at the time of the filing of the bill, and none of them had had any issue born.

Celia Adele Tibbetts, the widow, was appointed guardian of each of the four children and at the time of the filing of the bill was still the guardian of the minor children Norris and Howard.

The trustees accounted to the Probate Court for the administration of the trust up to July 28, 1913, on which date Charlotte A. Tomkinson reached the age of twenty-five years, and on that date the trustees held as the trust fund under the will real estate and personal property of a value, at the valuations shown in this account, of $650,141.30. The time had arrived for the distribution to Charlotte A. Tomkinson and the setting apart for her of a portion of the trust fund in regard to which the plaintiffs sought instructions. The twenty-first article of the will was as follows:

"Twenty-first. All the rest, residue and remainder of my estate real and personal, of every kind and nature, and all property and interests without reservation, to which I may be entitled at the time of my decease, I give, devise, and bequeath to my said wife, Celia Adele Tibbetts, and William T. Sheppard of said Lowell, Trustees, and their successors in office as Trustees, chosen and appointed in the manner hereinafter provided, in trust, nevertheless, for the following uses and purposes only:

"1. To separate and set off from the remainder of said trust fund, both so far as concerns the charges hereinafter made upon said trust fund, and so far as concerns the fund which is the basis of and subject to the several distributions hereinafter mentioned, my homestead situated on Mansur Street in said Lowell, or any future homestead acquired by me in place thereof, together with all fixtures and furnishings thereof, including horses and carriages and all the articles of personal property now or at the time of my decease used by myself or family in the occupation and enjoyment of said homestead, and to hold, retain, and maintain said homestead, with the appurtenances thereto, for a home for my said wife and for my said children, until the youngest of my said children who shall be living at the time of my decease, and who shall live to attain the age of twenty-one (21) years, shall have attained such age. The funds and moneys for the maintenance and support of said homestead and the appurtenances thereto shall be taken and supplied as is hereinafter provided. And when the youngest of my said children who shall be living at the time of my decease and who shall live to attain the age of twenty-one (21) years, shall have attained such age, then and in that event my said Trustees shall cease to maintain said homestead and the appurtenances thereto, and shall apply and treat the same, or the proceeds thereof, for the same purposes and in the same manner in every respect as is hereinafter specified and directed in the case of the final residue and remainder of said trust fund. And I authorize my said Trustees or Trustees for the time being, if they shall deem it for the best interests of my said wife and children, and for the advantage of my estate, during the time that I have hereinbefore directed that said homestead be held in trust, to sell, transfer and convey said homestead on Mansur Street, or any future homestead acquired by me in place thereof. But in case such sale, transfer, or conveyance be made during said period within which I have directed that said homestead be held in trust, I direct that my said Trustees, immediately upon such sale, transfer, or conveyance, procure and provide out of the proceeds therefrom, and if necessary out of other moneys of this trust fund, another suitable homestead, the cost thereof not to exceed twenty-five thousand (25,000) dollars, which newly acquired homestead shall be held by my Trustees for the same purposes, for the same

period, and in the same manner in every respect, as is hereinbefore provided in the case of my said homestead on Mansur Street.

" 2. To separate and set off from the remainder of said trust fund the sum of twenty thousand (20,000) dollars and out of the income thereof, or out of the principal thereof as it may be necessary, to provide for and pay the following annuities:

" (a) To pay to my sister, Isabel C. Kingsbury, of said Charleston, during her life, an annuity of two hundred (200) dollars, payable quarter-yearly from and after my decease, the first payments to be made as soon as may be after my decease.

. " (b) To pay to my sister, Sarah Johnson, of said Charleston, during her life, an annuity of two hundred (200) dollars payable quarter-yearly from and after my decease, the first payment to be made as soon as may be after my decease.

" (c) To pay to my sister, Fanny E. Leighton, of Millbridge, in the State of Maine, during her life, an annuity of two hundred (200) dollars, payable quarter-yearly from and after my decease, the first payment to be made as soon as may be after my decease.

. " (d) To pay to my sister-in-law, Sarah Jennings Tibbetts, widow of Charles F. Tibbetts, of said Charleston, during her life, an annuity of two hundred (200) dollars, payable quarter-yearly from and after my decease, the first payment to be made as soon as may be after my decease.

" And upon the decease of the survivors of the above named beneficiaries and recipients of annuities as aforesaid, then and in that event my said Trustees shall apply and treat the fund hereby set apart, and the income thereof, for the same purposes, and in the same manner in every respect as is hereinafter specified and directed in the case of the final residue and remainder of said trust fund.

" 3. To use such part of the income of the residuary trust fund to an amount not exceeding the sum of one thousand (1,000) dollars annually, for five years from the first day of March, 1905, as may become necessary to pay the salary of Rev. Harry Taylor, associate or assistant pastor of the First Baptist Church in said Lowell, provided said Taylor continues as said pastor, and said church or the Society connected with said church pays the balance at least of said salary.

"4. To use such part of the income or of the principal of said residuary trust fund as is necessary for the maintenance and support of said homestead on Mansur Street, in said Lowell, or such other homestead as may be acquired in place thereof in the manner hereinbefore provided, with the appurtenances thereto, and for the proper use and enjoyment of the same by my said wife and children, in the manner and for the period as hereinbefore specified.

"5. To use such part of the income or of the principal of said residuary trust fund as is necessary and proper for the support, maintenance, advancement and education of my said children, and each of them, until said child respectively shall attain the age of twenty-five (25) years.

"6. My said Trustees shall hold the residue and remainder of said trust fund, and the income thereof, after being subject to the aforesaid uses and provisions, and in case of the failure or termination of any or all of the trusts hereinbefore declared and contained as to the whole or any part of the said trust premises, on [or] the income thereof, my said Trustees, shall hold also the said trust premises, and the income thereof, or so much thereof respectively as to which the trust shall so fail or determine, upon trust for such child or children of mine as shall survive me and if he or they attain the age of twenty-five (25) years, and the child or children living at or after my death, of any child or children of mine who shall be dead at my death, or shall die under the age of twenty-five (25) years, and, if more than one, in equal shares as between brothers and sisters; but so that the child or children collectively of any child of mine dead at my death, or dying under the age of twenty-five (25) years, shall take only such share as his, her, or their parent would have taken if living: But said fund and the income thereof, so held in trust, shall vest in said children or their issue as aforesaid as to the whole or any part of said fund, and shall become payable to the beneficiaries aforesaid, only in the manner and at the periods as hereinafter directed.

"7. As each of my children who shall be living at the time of my decease shall attain the age of twenty-five (25) years, my said Trustees shall separate and set apart from the said trust fund the proportional share of such child as he or she shall be entitled to under the provisions of the preceding section (section 6) relating

to this trust, the amount of the estate from which such share shall be computed to be taken as of the time of such setting apart. And of such proportional share set apart aforesaid, as each of my children shall attain the age of twenty-five (25) years, my said Trustees shall then and at that time pay over, transfer, and deliver absolutely to such child one-half of his or her respective share so set apart. And the remaining half thereof shall continue to be held in trust by my said Trustees, and for the sole benefit of such respective child, but said child shall take no vested interest therein, until such child shall have attained the age of thirty (30) years. And as each of my said children shall attain the age of thirty (30) years, my said Trustees shall then and at that time pay over, transfer, and deliver absolutely to such child the remaining half of his or her respective share set apart as aforesaid, with the income thereof.

"8. And if any child or children of mine now living, or born hereafter, shall have died in my lifetime, leaving issue living at my decease, or if any child or children of mine living at my decease shall die before reaching the age of twenty-five (25) years, or shall die between the ages of twenty-five (25) and thirty (30) years, leaving issue living, then and in any of such events, my said Trustees shall pay over, transfer, or divide to and among such issue as shall attain the age of twenty-one (21) years, such part of the said trust fund as, in case such parent died before attaining the age of twenty-five (25) years, would have been such parent's respective share to be set apart as hereinbefore directed, and in case such parent died between the ages of twenty-five (25) years and thirty (30) years, such part of such parent's respective share as had not already been paid over and transferred to such parent; in equal shares as between brothers and sisters among such issue, but so that the child or children collectively of any child of mine dead at my decease, or dying under the age of twenty-five (25) years, or between the ages of twenty-five (25) years and thirty (30) years, as the case may be, shall take only such share as his, her, or their parent would have taken, or would have taken in addition to what had already been paid such parent under the provisions of this trust, if living.

"9. And if any child or children of mine living at my decease, shall die before reaching the age of twenty-five (25) years, or shall

die between the ages of twenty-five (25) years and thirty (30) years, leaving no issue, then and in either of such events, such child's share in the trust fund, in case he or she died before reaching the age of twenty-five (25) years, or the unpaid half of such child's share, in case he or she died between the ages of twenty-five (25) years and thirty (30) years, shall be joined and retained to and with the general trust fund held for my children or issue as aforesaid, and shall be applied and treated by my Trustees for the same purposes and in the same manner in every respect as is directed in the case of the general trust fund to be held by my Trustees for my children or their issue as aforesaid; and shall be distributed in the same manner and under the same conditions as said general trust fund: But any child or children of mine, or any issue of a deceased child, who may have received the whole or any part of his, her, or their proportional share of the general trust fund before such new distribution shall take place, shall nevertheless be entitled to his, her, or their proportional share of the new distribution, in the same proportion and in the same manner as is hereinbefore provided.

"10. And although the periods of distribution and of partial distribution of the said trust fund, as hereinbefore stated, are different and distinct for each of my several children, due to the difference in their several ages, it is my desire, and I so direct, that my Trustees use every reasonable effort to treat each of my children living at my decease, and attaining the ages as hereinbefore specified, in an equal and impartial manner, as it has been my endeavor to secure that end under the provisions of this my will. And it is my intention, and I so direct, that no child or children of mine shall have a vested interest in any part of said trust fund, or in any share or part of a share set apart for such child or children, so far as concerns the right to demand distribution, the right of disposing of the same by will or otherwise, or the right of inheritance, until such child or children be entitled under the provisions of this will to the payment of his or her share or part of a share thereof.

"11. And none of the estate herein bequeathed or devised, so long as the same shall be held in trust, under the provisions herein contained, shall be subject to the power of alienation, assignment, anticipation, or attachment by or against the beneficiaries here-

inunder entitled, and the said estate shall all be free from the interference or control of creditors; and any such attempted alienation, assignment, anticipation, or attachment on the part of or against any of the beneficiaries hereinunder entitled shall be null and void and of no effect.

"12. And I authorize my said Trustees, or my Trustees for the time being, at any time or times to sell the whole or any part or parts of the said trust estate, both real and personal, either together or in parcels, and either by public auction or by private contract, and upon such terms and subject to such conditions and in such manner in all respects, as they shall deem proper and best for my estate — and the purchasers, at any such sales from my said Trustees or their successors, shall not be required to see to the application of the purchase money — with power to buy or rescind, or vary any contract for sale, and to resell without being responsible for loss, and for the purpose aforesaid to execute all such deeds, assurances, and other papers as they shall judge best for all concerned. And I authorize my said Trustees at any and all times to invest and reinvest the whole or any part or parts of the said trust estate at their discretion. But in all their investments and reinvestments, my Trustees are expressly limited and nothing herein contained shall be otherwise construed, to that class of property which by the laws of this Commonwealth is held to be proper and suitable for the investment of trust funds."

The case was submitted on briefs.

*J. B. Studley,* for Celia Adele Tibbetts, guardian, and for J. Butler Studley, guardian *ad litem.*

*F. H. Nash & J. W. Worthington,* for the respondent Charlotte A. Tomkinson and others.

SHELDON, J. This testator declared, among the somewhat confused provisions as to the dispositions of the trust fund created by the twenty-first article of his will, what was his general intent and governing desire in the distribution finally to be made among his children or their issue. He said, in paragraph ten of that article: "Although the periods of distribution and of partial distribution of the said trust fund . . . are different and distinct for each of my several children, due to the difference in their several ages, it is my desire, and I so direct, that my Trustees use every reasonable effort to treat each of my children living at my

decease,. and attaining the ages as hereinbefore specified, in an equal and impartial manner, as it has been my endeavor to secure that end under the provisions of this my will." This general intent must, so far as possible be carried out, even though the result may be to vary from some of his minor directions, so far at any rate as these are expressed in equivocal language or are of doubtful or uncertain meaning. *Malcolm* v. *Malcolm,* 3 Cush. 472. *Williams* v. *Bradley,* 3 Allen, 270, 280. *Barrett* v. *Marsh,* 126 Mass. 213, 216. *Metcalf* v. *Framingham Parish,* 128 Mass. 370, 374. *Moseley* v. *Bolster,* 201 Mass. 135, 144. And technical canons of construction will not be permitted to control the general rule that the intention of the testator, once ascertained, must govern the decision of the court. *Stedman* v. *Priest,* 103 Mass. 293, 296. *Ware* v. *Minot,* 202 Mass. 512, 516.

One of the children of the testator, Mrs. Tomkinson, has now reached the age of twenty-five years and is entitled to receive a share of the trust fund; and the question presented is whether any and what deductions are to be made from that fund in order to ascertain the net amount of which a fractional part is to be paid to her.

1. All parties agree, rightly in our opinion, that the fund of $20,000 ordered by paragraph two of the twenty-first clause of the will to be set apart from the trust fund as a provision for the payment of certain annuities therein mentioned, must be deducted from the principal of the trust fund before any share thereof can go to Mrs. Tomkinson. That is the plain language of the testator; it is a temporary modification, not in any sense a contradiction, of the general intent which we have stated. With the future disposition of this sum, after the decease of the last survivor of the annuitants, the plaintiffs now are not concerned. They are to be instructed only as to their present duty, not as to what hereafter may become their duty. *Quincy* v. *Attorney General,* 160 Mass. 431, 437. *White* v. *Massachusetts Institute of Technology,* 171 Mass. 84, 97.

2. As the youngest child of the testator has not yet reached the age of twenty-one years, the homestead and "all fixtures and furnishings thereof" are not to be included in the trust fund of which Mrs. Tomkinson now is to have a share. This too is the

unmistakable direction of the testator. The plaintiffs are not now concerned with the question what is to become of the homestead after the coming of age of the youngest child.

3. Nothing should be deducted from the trust fund before making this division to provide, under the paragraphs numbered four and five of this clause, either for the maintenance and support of the homestead and the use and enjoyment thereof by the testator's widow and children, or for the support and education of his children until they "respectively shall attain the age of twenty-five years." As to this, the language of the testator is somewhat ambiguous. It seems clear, however, that he intended both of these provisions to stand upon the same footing; and we are of opinion that his intention is sufficiently manifest. He had made in the earlier part of his will provision for his widow which he deemed ample. Before any distribution was to be made among his children, they were all provided for alike. As they should respectively reach the prescribed age when they were no longer to share in this provision, the fund appropriated for the benefit of the others must be correspondingly diminished if the children were to be kept upon an equality. Otherwise, the provision for the younger children would increase as their elders successively reached the appointed age, until finally the youngest child, for nearly four years, would be potentially dealt with much more liberally than any of his elders had been. This was not contemplated by the testator. The diminution of the necessary charges upon the income of the fund, he must have considered, was to be accompanied by a corresponding diminution of the principal arising from the successive payments or the setting apart of each child's share of that principal. It is before such diminution, — that is, before any of the children shall have attained the age of twenty-five years, — that the fund is to be held subject to the charges which are now being considered. After that time, each child becomes entitled, on reaching the prescribed age, to his share of the whole fund, subject only to the deductions which have been specifically directed; and such a direction has been given only as to the homestead and the fund of $20,000.

4. For the same reasons the plaintiffs cannot require Mrs. Tomkinson to make out of her share of the fund any con-

tribution for either of the purposes which have last been considered.

The plaintiffs are to be instructed that it is their duty to set apart from the whole amount of the trust fund the homestead estate with "all fixtures and furnishings" and any proceeds thereof, and also the sum of $20,000 as aforesaid and any accrued income thereof, and to set apart and separate from the residue of said fund one fourth part thereof, and pay over and transfer to Mrs. Tomkinson absolutely one half of such fourth part and to hold the remaining one half thereof for her benefit as provided in the will. For the reasons already stated, no further instructions should now be given to the plaintiffs.

*Decree accordingly.*