WILLIAM.W. MANNING & another, trustees, *vs.* JAMES H. MANNING & others.

Middlesex.　January 15, 1918. — February 28, 1918.

Present: RUGG, C. J., DE COURCY, CROSBY, PIERCE, & CARROLL, JJ.

*Devise and Legacy,* Who takes. *Words,* "Their issue," "Issue."

A testator provided by his will that a trust fund, from which during the lives of his four children and the survivor of them the income was to be paid in substantially equal sums to his children and to the children of any deceased child by representation, upon the death of his last surviving child should be conveyed and delivered "to all my then surviving grandchildren and their issue," and it was *held* that the whole will showed a dominant purpose of the testator to treat his children or their issue with substantial equality in distributing the income and strongly indicated a purpose to distribute the principal in a like manner among the living grandchildren and the issue of those who should die before the time of distribution, and accordingly that the clause quoted above should be construed as if it read, "to all my then surviving grandchildren and [in case of their death to] their issue."

BILL IN EQUITY, filed in the Probate Court for the county of Middlesex, on August 15, 1917, by the trustees under the will of Prentiss Hobbs, late of Brighton, for instructions as to the distribution of the estate and property in their hands as such trustees upon the death of Elizabeth L. Howe, the last survivor of the children of the testator, who died on February 27, 1916.

The judge of the Probate Court made a decree "that the grandchildren of said Prentiss Hobbs living at the death of Elizabeth L. Howe, but none of the other defendants, are entitled to the estate in the hands of the plaintiffs to be distributed, and that those so entitled are entitled thereto in equal shares, any issue to take the share of their deceased ancestor by right of representation."

Certain of the defendants appealed, making various contentions as stated in the opinion.

The appeals came on to be heard together, upon the pleadings, the copy of the will annexed to the bill and a stipulation as to agreed facts, before *Carroll*, J., who at the request of the parties reserved the case for determination by the full court, such decrees to be entered as equity and justice might require.

*F. B. Newton*, for the plaintiffs, stated the case.

*G. P. Wardner*, for the grandchildren of the testator.

*R. L. Robbins*, guardian *ad litem*, for great-grandchildren of the testator.

*C. H. Walker*, guardian *ad litem* and next friend of Wayland M. Minot, Jr.

DE COURCY, J. Prentiss Hobbs died on August 28, 1858, leaving an estate worth about $125,000. His wife predeceased him; and he was survived by his four children, Abby R. (Manning), Lydia, Joshua B. F., and Elizabeth L., born respectively in the years 1831, 1836, 1837 and 1839. A grandchild, Prentiss Hobbs Manning, also survived him; and Mrs. Manning was the only one of the testator's children then married.

The will of Mr. Hobbs was executed ten days before his death. He bequeathed his estate, subject to the payment of his debts, to trustees, provided an annuity of $50 for his mother-in-law, Mrs. Lincoln; and directed the trustees to pay out of the income $1,000 a year to each of his daughters, and $600 a year to his son, during their several lives. He then directed as follows:

"6th. On the decease of either of my said four children, leaving issue or descendants of such issue, then In Trust, to pay to such issue or descendants, annually, in quarterly instalments, the sum hereinbefore given to the parent of such issue or descendants — until the decease of the last Survivor of my said four children — And

7th. Upon the decease of the said last Survivor then In Trust, to convey and deliver to all my then surviving grandchildren and their issue, all my said estate and property, with the increase thereof in equal shares — in fee simple and full property, forever — "

Mrs. Lincoln has died. The last survivor of the testator's children, Elizabeth L. (Howe), died on February 27, 1916; and

all of them except the son, Joshua B. F. Hobbs, left issue surviving them. The only question now presented on this bill for instructions is, who were entitled to the principal of the trust estate at the death of the last life tenant? The contention of the fifteen surviving grandchildren is that the estate should be distributed among them in equal shares *per capita*. The guardian *ad litem* for the minor great grandchildren contends that the estate should be conveyed to or distributed among the testator's then surviving fifteen grandchildren and sixteen great-grandchildren, in equal shares *per capita*. The guardian *ad litem* for Wayland M. Minot, Jr., argues that the estate should be divided among the fifteen grandchildren, the sixteen great-grandchildren, and the one great great-grandchild living at the death of the last life tenant, in equal shares, — each taking one thirty-second part. As the position of both guardians *ad litem* is the same, except in the one respect of the extent to which generations more remote than great-grandchildren may be included within "issue," we shall embrace the contentions of both when dealing with the great-grandchildren, unless otherwise stated.

At the threshold, it is apparent that the interpretation proposed by the great-grandchildren would lead to unreasonable and inequitable results. By allowing the grandchildren and great-grandchildren to take simultaneously it admits children to compete with their living parents, — a construction to be avoided unless such plainly was the testator's intention. *Dick* v. *Lacy*, 8 Beav. 214, 221. *Audsley* v. *Horn*, 29 L. J. Ch. (N. S.) 201. Further, although on the death of either of the testator's children during the fifty-seven years preceding the death of the last survivor, Mrs. Howe, the "issue or descendants" of such deceased child would succeed to the parent's share of the income under article sixth of the will, yet on the death of Mrs. Howe the issue of any deceased grandchild would not only be excluded from all share in the principal, but the income which they had been receiving would be cut off. The proposed construction also would involve some surprising discriminations in individuals and families. For instance, as only the issue alive at the death of the last life tenant can take, children born to the grandchildren after the period of distribution would be excluded, while their brothers and sisters born before that period would take directly under the will. Again,

as pointed out by counsel, at the death of the last life tenant, the grandson, Herbert H. Howe, was as yet unmarried, whereas his older brother, William P. Howe, had six children. Under this construction the family of William would get seven parts while that of his brother would get but one; and the entire family of another grandson, Wayland Manning, would get but two, as he had only one child at the death of the last life tenant.

An intention so capricious and inequitable should not be attributed to a testator, who admittedly was "a kind father," and whose "relations with the children were affectionate," unless it is plainly manifested by the language of his will. It is not decisive that the strict grammatical construction of a separate clause would warrant the conclusion urged on behalf of the great-grandchildren. As was said in *Boston Safe Deposit & Trust Co.* v. *Coffin,* 152 Mass. 95, 98, "The general principles which apply to the construction of a clause similar to the one in question are well settled. While care must be taken that courts do not undertake to make wills for testators, and while their meaning is not to be ascertained by mere conjecture as to what they may have intended, the true meaning of words used is to be arrived at by considering them in their relation not only to the clause immediately in question, but to the whole will. Their more grammatical or ordinary sense is not to be adhered to, if it would be repugnant to or inconsistent with the remainder of the instrument." And when an examination of the will as a whole makes clear the general intention of the testator, that must control the interpretation of a clause which is of ambiguous or uncertain meaning. *Tibbetts* v. *Tomkinson,* 217 Mass. 244. *Miller* v. *Idaho Industrial Institute,* 222 Mass. 188.

The language in controversy, providing for the distribution of the trust estate "to all my then surviving grandchildren and their issue," is open to different constructions. As stated in 28 Halsbury's Laws of England, § 1436: "In a gift to a donee 'and his children' or to a donee 'and his issue' the last words in each case are capable of being used as words of limitation, or words of description of persons to take either concurrently with or in succession to the named donee, or in substitution for him." There is ample authority for construing "their issue" as words of limitation, whereby the surviving grandchildren would take estates tail in the real

estate and absolute interests in the personal property. *Coulden
v. Coulden,* [1908] 1 Ch. 320. *Parkman* v. *Bowdoin,* 1 Sumn. 359.
*Wheatland* v. *Dodge,* 10 Met. 502. *Albee* v. *Carpenter,* 12 Cush.
382. Or, the language used might vest a life estate in the grand-
children with remainder to their issue, *Audsley* v. *Horn,* 29 L. J.
Ch. (N. S.) 201, or concurrent interests in the first and sec-
ond donees, *Clay* v. *Pennington,* 7 Sim. 370, *Buffar* v. *Bradford,*
2 Atk. 220. Again, the language in article seven may be construed
as an alternative original gift to the surviving grandchildren and
the issue of any deceased grandchild by right of representation.
*Burrell* v. *Baskerfield,* 11 Beav. 525. *Re Stanhope's Trusts,* 27
Beav. 201. *Hall* v. *Hall,* 140 Mass. 267.

In determining which of these possible interpretations should
be adopted, it is important to discover what was the general in-
tent of the testator, as shown by an examination of the entire
will, in the light of the circumstances existing when he made it.
His children were then aged substantially twenty-seven, twenty-
two, twenty-one and nineteen years, and only one grandchild was
living. Aside from an annuity of $50 to Mrs. Lincoln, his entire
estate is given to his children and their issue. His children share
in the income only, but with substantial equality, the daughters
receiving annually $1,000 each and the son $600. Contemplating
the probability of grandchildren, which in time was realized, he
provided for them in the event of the parent's death before the
time for distributing the principal, and in doing so maintained
his plan of substantial equality by giving to such grandchildren
the share of the income that their deceased parent had enjoyed.

This dominant purpose of the testator to treat his children (or
their issue) with substantial equality in distributing the income,
strongly indicates a purpose to distribute the principal with like
substantial equality among the living grandchildren and the
issue of those who should die before the time of distribution —
such issue taking, as alternative and original donees, the share
their ancestor would have taken had he survived the life tenant.
Such a construction of article seven not only is in conformity
with the rest of the will, but it avoids the unreasonable and un-
fair results that must follow from either of the other interpreta-
tions suggested, — results which plainly would not effectuate the
intention of the testator. It merely expresses what seems to us

to have been his intention by construing the clause in controversy as if it read, for instance, "to all my then surviving grandchildren and [in case of their death to] their issue." As was said in *Jackson* v. *Jackson*, 153 Mass. 374, 377, "The tendency of our decisions has been more and more to construe 'issue,' where its meaning is unrestricted by the context, as including all lineal descendants and importing representation, and certainly, when the issue take as of a particular time after the death of the testator, and only the issue living at that time take, the issue of deceased issue take by a sort of substitution for their ancestors." *Hall* v. *Hall*, 140 Mass. 267. *King* v. *Savage*, 121 Mass. 303. *Dexter* v. *Inches*, 147 Mass. 324. *Hills* v. *Barnard*, 152 Mass. 67. *Coates* v. *Burton*, 191 Mass. 180. *Sanger* v. *Bourke*, 209 Mass. 481, 488. *Coulden* v. *Coulden, supra.* *Vaughan* v. *Dickens*, 22 N. C. 52. *Loomer* v. *Loomer*, 76 Conn. 522.

*Decree of Probate Court affirmed.*