IN THE MATTER OF THE ESTATE OF ATLE H. FRETHEIM,
DECEASED.
L. O. BENSON, LENA LODAHL AND EDWARD BREKKE AND
OTHERS v. H. O. BENSON AND OTHERS,
HEIRS OF INGEBORG BELL.[1]

July 20, 1923.

No. 23,502.

**Construction of device and bequest to testator's legal heirs.**

1. A will appointed executors, directed the payment of debts and funeral expenses, revoked all former wills, and provided further as follows: "After the payment of such funeral expenses and debts, I give, devise and bequeath to my legal heirs according as the law provides." *Held* effectual as a disposition of the estate to those who would have taken in case of intestacy.

**Act of 1917 construed.**

2. Chapter 272, Laws 1917, construed to amend the former statute concerning the descent of personal as well as that relative to real property.

**Legal heirs at time of testator's death.**

3. The phrase "my legal heirs according as the law provides," there being nothing in the context or in the circumstances of the case indicating a contrary intention, construed to mean the heirs at the death of the testator. Re Swenson's Estate, 55 Minn. 300, distinguished.

**Descent to next of kin in equal degree.**

4. There being no surviving issue of the deceased, and neither spouse, father nor mother, brother nor sister, the estate under the statute, G. S. 1913, § 7238, subd. 5, as amended by Laws 1917, chapter 272, descends to the "next of kin in equal degree," who in this case are the nieces and nephews, and who take to the exclusion of children of deceased nieces and nephews.

The last will and testament of Atle H. Fretheim was admitted to probate in the probate court for Fillmore county. That court

[1] Reported in 194 N. W. 766.

in its final decree, Michener, J., assigned the residue of the estate to the surviving nieces and nephews per capita. Six separate appeals from the final decree were taken to the district court for that county where the appeals were heard together by Meighen, J., who affirmed the order of the probate court as to the proceeds of the real estate, but determined that the nieces and nephews and children of deceased nieces and nephews should take the personal property per stirpes. Upon motions for amended findings or a new trial, Peterson, J., successor to Meighen, J., decided the entire estate should go to the nieces and nephews and the children of deceased nieces and nephews per stirpes. From an order denying their motions for amended findings and conclusions or for a new trial, Clara Bell and the other heirs of Ingeborg Bell appealed. Reversed.

*John N. Berg*, for appellants.

*Hopp & Larson* and *S. C. Pattridge*, for respondents.

STONE, J.

On June 25, 1920, Atle H. Fretheim died, and in due course there was admitted to probate his will, executed on June 7, 1909. It consisted of the following: (1) A direction to the executors to pay debts and funeral expenses; (2) these words: "After the payment of such funeral expenses and debts, I give, devise and bequeath to my legal heirs according as the law provides;" and (3) the appointment of two executors and the revocation of "all former wills."

The deceased left, him surviving, neither wife nor children, father nor mother, brother nor sister. He had had 5 brothers and sisters. When the will was made, 3 were living, 2 sisters having died some 2 years before. The others died after the will was made but before the passing of the testator. All the brothers and sisters left children. In each of 3 of the families, there are 3 children. In another, there are 5. Ingeborg Bell, one of the sisters, now deceased, left 14 children, all of whom are living. Certain of the nieces and nephews have died, some with, and some without, children.

The probate court distributed the estate to the 28 surviving nieces and nephews per capita. On appeal to the district court there were 2 decisions, one by Judge Meighen, on the day before his

term of office expired. He affirmed the probate court as to the proceeds of real estate. But as to personal property, for reasons hereinafter considered, he determined that the nieces and nephews, and children of deceased nieces and nephews, should take per stirpes. Judge Meighen was succeeded in office by Judge Peterson, before whom the matter came on motions for amended findings or a new trial. It was his opinion that the entire estate should go to the nieces and nephews and the children of deceased nieces and nephews, *per stirpes*—under the statute of descent in force when the will was made, although by amendment the *per capita* rule was in effect at the testator's death. The heirs of Ingeborg Bell, by appeal from Judge Peterson's order denying a new trial (after he had amended the findings to conform with his views), bring the case here for review.

1. It is first contended that the will is too indefinite to operate as a testamentary disposition of property. The case has proceeded thus far upon the theory that its efficacy is beyond question. It is too late now for the appellants to adopt a new and wholly inconsistent theory. But, passing that, we have no difficulty in concluding that the will, though unusual as to form, is a valid testamentary disposition of the property, and all of the property, of the testator. He selected the executors who were to distribute his estate, and revoked "all former wills." It does not change the character of the will as such that his entire property is given to those who would take in case of intestacy. That the testator intended to distribute all his property to his "legal heirs according as the law provides," is clear.

2. Judge Meighen was not required to give "serious consideration to the question of whether the testator intended by the language in his will to incorporate, by reference, the then existing law." He decided the case upon the *assumption* that, as the case was presented to him, the law in effect at the date of the death of the testator would control, and devoted his attention to the construction of that law. It is necessary, therefore, to consider the statute as it stood in 1907, when the will was made, and the changes that have taken place since.

When the will was drawn, the statute of descent was sections 3648-3658, R. L. 1905. Subdivision 5 of section 3648 was, so far as is now material, as follows: "If the intestate leaves neither issue, spouse, father, mother, brother nor sister, *nor living issue of any deceased brother or sister*, his estate shall descend to his next of kin in equal degree." The clause here italicised was not in our law before the revision of 1905. (See subdivision 6 of section 4471, G. S. 1894). Its effect was dealt with in Swenson v. Lewison, 135 Minn. 145, 160 N. W. 253. It was stricken out, and the old law restored, by chapter 272, p. 410, Laws 1917, whereby subdivision 5 of section 7238, G. S. 1913 (subdivision 5, § 3648, R. L. 1905 or rather that part of it above quoted), was amended to read: "If the intestate leaves neither issue, spouse, father, mother, brother nor sister, his estate shall descend to his next kin in equal degree." In other words, under the law as it stood before the 1917 amendment, the per capita rule did not take effect while there was living issue of any deceased brother or sister. Consequently, nieces and nephews always took *per stirpes and not per capita*. The amendment advanced the taking effect of the per capita rule to the death of the last brother or sister, and provided that then nieces and nephews, as "next kin" of decedent, should take the entire estate *per capita*, whereas before they took, as *issue* of decedent's brothers and sisters *per stirpes*.

It was the opinion of Judge Meighen that, because the 1917 law referred to and amended expressly only the old statute concerning real estate, it did not touch at all the one concerning personal property. His view was that when a statute adopts a part or all of another statute, by specific and descriptive reference, such adoption takes the statute as it exists at that time; and subsequent amendments, or a repeal of the adopted statute, have no effect on the adopting statute. That is an unquestioned rule, but not to be applied where the clear legislative intention is to the contrary. In our opinion it does not apply to the statutes now under consideration.

The common law notion of the distinction, for purposes of descent and distribution, between real and personal property, was discarded

here in territorial days. By subdivision 6 of section 1, of chapter 55, R. S. 1851, the residue of personal property was "distributed in the same proportion, and to the same persons, and for the same purposes, as prescribed for the descent and disposition of the real estate," except that the widow took the same as a child. From that time to the present, the legislature has never indicated any notion of having personal descend, in the main, by any different rule than real property, unless in 1917 it was done in the very negative manner of omitting to amend expressly the then section concerning personal property, as well as the one concerning real estate, the latter being expressly amended as already indicated. The long continued and firmly settled policy of the state was in question, and notwithstanding the general rule above stated, concerning amendment by reference and adoption, it is clear that the legislative intent was to continue, for both real estate and personal property, the same rule of descent. It is inconceivable that the legislature deliberately chose different methods for the distribution of real and personal property in just one of the many situations covered by the statute, and left the rule the same in all the others.

This conclusion is put beyond question by the title of the act of 1917, which is: "An act to amend section 7238, General Statutes 1913, of the state of Minnesota, relating to the descent of real and personal property."

Chapter 173, p. 229, Laws 1921, has nothing to do with the case. That act, according to its title, was to amend the statute "so as to provide for escheat of personal property in certain cases." The language then added to the statute has no other effect than to provide for escheat of personal property "if the intestate leaves no spouse nor kindred."

3. If the testator intended to distribute his propery according to the law as it was at the time he made his will, we must now hold (in agreement with the final decision in the district court) that the nieces and nephews and the children of deceased nieces and nephews take, not *per capita*, but *per stirpes*. The testator could have limited his beneficiaries, both as to identity and method of distribution, to the statutory method then in force. Did he do

that, or did he intend only that at his death his property should be distributed as the law might then provide? That is the crucial question. We have resolved it in favor of a distribution on the *per capita* basis, that is, according to the statute as it was in 1920, when the testator died. Our reasons remain to be stated.

It is our duty to ascertain the testator's intent. That is difficult, for neither inside nor outside the will do we find any efficient aids. Perhaps we are dealing with contingencies which never occurred to the testator. If it is such a case, that is, if the testator never thought of the situation now presented, we must yet construe and apply the will. Our task in such case is to say if possible what he would have done had he thought of the instant question.

There is no suggestion that he favored any one niece or nephew, or any family group of them. There is no suggestion that, his sisters and brothers being dead, he would object to an equal division of his estate among his nieces and nephews. There is nothing to indicate that he would want the three children of one family to take as much as the 14 in another.

If testators will persist in using words of technical import, without explanatory context, their beneficiaries can not complain if courts continue to give such words effect according to their long accepted legal definition. So here, in the absence of any indication in the will that the word "heirs" should have other than the meaning which has long been applied to it when it is unaccompanied by explanatory context, we must adopt such meaning. "In the absence of a contrary intent, words descriptive of the objects of a gift refer to the death of the testator, and not to the date of his will or period of its execution. Thus, under a gift to fluctuating classes, as children or descendants, all who answer the description at the death of the testator are entitled, irrespectively of those to whom the description was applicable at the date of the will, but who subsequently died in the testator's lifetime." Yates v. Shern, 84 Minn. 161, 86 N. W. 1004. "It is well established as a general rule of construction that a bequest or devise by a testator to his heirs-at-law and next of kin will be construed as referring to those who are such at the time of his death unless a different intent is plainly

manifested by the will." People v. Camp, 286 Ill. 511, 517, 122 N. E. 43, 45.

"The words 'heirs or next of kin' are technical legal words, and in their legal sense bear within themselves an indication as to the time intended for fixing the class, which cannot be overlooked. The legal relation or *status* of 'heir' or 'next of kin' arises only upon the death of the ancestor, and it arises immediately. In a legal sense therefore, 'heirs' implies a reference to the time of the ancestor's death, and if a testator makes a devise or gift to his 'heirs' or 'next of kin' those standing in that relation at the time of his death would seem to be the persons intended, unless there is something in the will itself to show that the testator had another period in his mind, and that the legal sense of the words is to be restricted by indications that some other time is fixed." Tuttle v. Woolworth, 62 N. J. Eq. 532, 538, 50 Atl. 445, 447. This last quoted language was used with respect to a gift to "my heirs, in the manner provided by the laws of New Jersey respecting intestate estates."

The respondents rely, and the final decision in the district court was based, upon Re Swenson's Estate, 55 Minn. 300, 56 N. W. 1115. It was there said that there was no inflexible rule for determining the meaning of the words "heirs at law" and that they "have been construed to mean children, adopted children, next of kin, heirs of a particular class or description, heirs presumptive, heirs apparent, heirs at the date of the will, heirs at the decease of the testator, or heirs at a later date even." But the decision proceeds to say that such constructions were predicated "upon an ascertainment of the testator's intention from the words used, from the context of the instrument, and from the surrounding circumstances." Here, we emphasize, there are no words in the context and no surrounding circumstances which give us any help or tend to any conclusion other than that the words "my heirs at law according as the law provides" refer to the testator's death. In the Swenson case the entire will indicated *conclusively* that at the death of the wife the residue of the real estate should go to the heirs at law "share and share alike," and that, by his heirs at law, the testator meant the persons named in other portions of the will, who would take under

the statute of descent as it then stood. *Any other intention was negatived expressly by the language of the will.* The Swenson case was very different from the one now under consideration.

Because he did not indicate that the word "heirs" was to have any other than its ordinary legal significance, and in the absence of controlling considerations leading to another result, we hold that the word "heirs" as used by Mr. Fretheim means those who would take his property in case of intestacy. "According as the law provides" is an equivocal phrase referring no more to the date of its use than to that period of the then future to be marked by the passing on of the user.

4. This decision not only has the effect of putting the 28 nieces and nephews on an equality, but it also excludes the children of deceased nieces and nephews, whereas if the estate were distributed under subdivision 4 of section 3648, R. L. 1905, those grandnieces and nephews would take, by right of representation. This result follows because under the old law, there being no surviving issue nor spouse nor father nor mother, the estate "shall descend in equal shares to his brothers and sisters, and to the lawful *issue* of any deceased brother or sister, by right of representation." The grandnieces and nephews are the grandchildren and as such, *issue* of the deceased brothers and sisters. This ordinary meaning of "issue" has been adopted here by statute. Subdivision 8, § 9412, G. S. 1913.

On the other hand, if the estate is distributed, as we hold it must be, under section 7238, G. S. 1913, as amended by chapter 272, p. 410, Laws 1917, there being no issue of the testator, and no spouse, father, mother, brother nor sister, the estate "shall descend to his next kin in equal degree." Here the *"next kin"* are the surviving nieces and nephews and they take to the exclusion of the children of deceased nieces and nephews. This effect of the statute has never been passed upon by this court except as it was involved in Staubitz v. Lambert, 71 Minn. 11, 73 N. W. 511. There an estate was distributed to six nieces and nephews *per capita* as the next of kin. That result, it was realized, if followed, would "exclude the children of a deceased nephew or niece if there were a nephew or niece to take." Concerning that argument Mr. Chief Justice Start

said [page 14]: "If this were so (and such is the construction given to a similar statute in the case of Conant v. Kent, 130 Mass. 178), still it would be no reason for disregarding the clear and express language of the statute." The instant case requires us to give effect to this "clear and express language." Accordingly we hold that, where nieces and nephews are next of kin, they take the entire estate to the exclusion of children of deceased nieces and nephews. See Conant v. Kent, supra; Van Cleve v. Van Fossen, 73 Mich. 342, 345, 41 N. W. 258. In the case last cited, concerning a statute such as this, it was said that there were no words suggesting that anyone takes by right of representation. "But that idea is excluded by the words that the estate shall descend to his 'next of kin in equal degree.' We must so construe this statute as to give each word and sentence force and effect, and effect, and the words 'in equal degree' exclude all others than those who stand in the same degree of kinship to the intestate." We adopt that reasoning. It leads irresistably to the exclusion, in this and similar cases, of the children of deceased nieces and nephews.

The order appealed from is reversed. There is no occasion for a new trial. The case is remanded and the final decree of the probate court will be affirmed.