We find no error in the judgment of the common pleas court.

*Judgment affirmed.*

VICKERY, P. J., and SULLIVAN, J., concur.

WATSON *v.* WATSON ET AL.

(Decided December 27, 1929.)

*Mr. Barton Walters* and *Mr. C. A. Leist,* for plaintiff.

312

*Messrs. Williams, Sinks & Williams,* for defendant William D. Watson.

BLOSSER, J. This case comes into this court on appeal from the judgment of the common pleas court of Pickaway county. The plaintiff, Charles W. Watson, brought an action for partition, and in his petition he recites that item 1 of the will of Wellington B. White, deceased, provided for a devise of land in the following language: "Item 1. I hereby give and devise to my daughter, Samantha Ann Watson, of Springfield, Illinois, my farm in Jackson Township, Pickaway County, Ohio, containing 320 acres more or less and known as the old home farm, to have and to hold for and during her natural life, and at her death to the issue of her body then living."

Samantha Ann Watson died July 10, 1928, leaving William D. Watson, Helen S. Watson, Alice French, and the plaintiff, Charles W. Watson, as her sole surviving children. In addition, as "issue of her body then living," are named in the petition Theron B. Miner and Alice Miner Campbell, grandchildren of Samantha Ann Watson, the life tenant, by her daughter Georgia Watson Miner, who predeceased Samantha Ann Watson. Plaintiff further alleges that he, his brother William D. Watson, and sisters Helen S. Watson, and Alice French, are tenants in common of the premises with Theron B. Miner and Alice Miner Campbell. He claims that he and his surviving brother and sisters are each entitled to one-fifth undivided interest, while his niece and nephew, referred to above, are each entitled to one-tenth undivided interest.

For answer William D. Watson admits all the

foregoing allegations with the exception that Theron B. Miner and Alice Miner Campbell are "issue of her body then living" and entitled to one-tenth undivided interest in the premises. Instead, he alleges that he and the plaintiff and their two sisters are the sole "issue of her body then living," and that each is entitled to one-fourth undivided interest.

From the issues as thus made it is first necessary for us to determine the meaning of the phrase "the issue of her body then living."

The rule in *Shelley's case* has been abolished in this state as regards wills. Section 10578, General Code. The language of that section is as follows: "When lands, tenements, or hereditaments are given by will to a person for his life, and after his death to his heirs in fee, or by words to that effect, the conveyance shall vest an estate for life only in such first taker, and a remainder in fee simple in his heirs."

It will be noted that this section of the General Code applies only to those situations in which the operation of the rule would result in the creation of a fee simple. It does not affect the creation of an estate tail by the rule. In the instant case "issue" or "issue of her body" would probably be sufficient to invoke the rule. These words standing alone would indicate a line of inheritable succession. But we have here the modifying words "then living." By the use of these words the aspect is changed, so that instead of dealing with words of limitation we are dealing with words of purchase, a *descriptio personarum*. A life estate is created in Samantha Ann Watson with remainder in fee to the "issue of her body then living."

The English cases and many authorities in America give to the word "issue" a broad meaning corresponding with descendants. In the absence of words indicating a contrary intention, it includes children, grandchildren, and so on. 2 A. L. R., 931 *et seq.*, and cases there cited. There is nothing in the will before us to show a different intention upon the part of the testator. "Of her body" can in no way be considered as limiting the meaning of "issue." This phrase indicates an abundance of caution by the testator to show that he intended the property to remain in his own stock. It was his purpose that no construction should be adopted whereby collateral heirs would take.

In the codicil to his will item 1 provides for a life estate to the widow, then a tenancy in common to the daughters with survivorship, and at the death of the last surviving daughter a remainder in fee "to all of my grandchildren then living." For the purpose of construction, the will and codicil may be read together. By using the specific word "grandchildren," it is shown that it was through no mistake as to meaning that the general word "issue" was employed in item 1 of the will under consideration here. Where the testator intended to refer to a particular class of descendants or issue, he knew how to convey his meaning by referring to the specific group. It seems clear to us from the language employed that the testator meant by "issue of her body" all degrees of descendants, limiting it only by the phrase "then living" at the death of the life tenant. From this construction, of course, the children of Samantha Ann Watson and her grandchil-

dren as well take under the will provided they were living at her death.

We must now determine what is the share of each of the beneficiaries. Is there intended a *per capita* or *per stirpes* distribution? On this point there is conflict among the authorities. There are no reported cases in Ohio on this precise question. It has been held in a number of other jurisdictions that a *per capita* distribution should be applied. On the other hand, in Massachusetts the word "issue" is regarded as importing representation. A number of reasons suggest themselves to support the Massachusetts rule. "The law favors an equal distribution of an estate among the children of the deceased owner; and it favors a distribution between near and remote heirs *per stirpes* in preference to *per capita*." *Kilgore* v. *Kilgore,* 127 Ind., 276, 26 N. E., 56.

This policy finds expression in the statute law of Ohio. Sections 8581 to 8584, General Code. The rule above referred to as applied in some jurisdictions permits children to compete with their parents in the distribution of the estate. This is in conflict with the normal human feeling of equality. It is more just for distribution to be according to stock rather than by the persons. The instant case comes within the language and decision of *Jackson* v. *Jackson,* 153 Mass., 374, 26 N. E., 1112, 1113, 11 L. R. A., 305, 25 Am. St. Rep., 643. The court there said: "We are of opinion that when by a will personal property is given in trust to pay the income to a person during life, and on the death of such person to pay the principal sum to his issue then living, it is to be presumed that the intention was that the is-

sue should include all lineal descendants, and that they should take *per stirpes,* unless from some other language of the will a contrary intention appears."

The will of Wellington B. White shows no contrary intention. It is drawn with great regard for equality among the stocks of his four children. Can we presume that he intended inequality between his grandchildren and his great grandchildren?

In the will now under consideration there are no such expressions as "share and share alike" or "in equal shares" or "to be equally divided." The use of these words would probably require a setting off of the several interests *per capita.* In such a case the intention of the testator could not be considered as authorizing a *stirpital* distribution. The Massachusetts decisions go to the length of applying a *per stirpes* construction even in such a case. *Dexter* v. *Inches,* 147 Mass., 324, 17 N. E., 551; *Coates* v. *Burton,* 191 Mass., 180, 77 N. E., 311; *Hall* v. *Hall,* 140 Mass., 267, 2 N. E., 700.

If we felt any hesitancy in adopting the rule which we here adopt, we feel that the reasoning and decisions in the cases of *Rhode Island Hospital Trust Co.* v. *Bridgham,* 42 R. I., 161, 106 A., 149, 5 A. L. R., 185, and *Manning* v. *Manning,* 229 Mass., 527, 118 N. E., 676, as well as in *Jackson* v. *Jackson, supra,* are sufficient to justify our conclusion. In the case of *Dixon* v. *Pendleton,* 90 S. C., 8, 72 S. E., 501, 2 A. L. R., 915, the testator used almost the same language that Wellington B. White employed in item 1 of his will, and the court reached the same result.

Therefore we hold that under item 1 of the will of Wellington B. White each of the four surviving children of Samantha Ann Watson took an undi-

vided one-fifth interest in the premises, and that the two grandchildren of their deceased sister, Georgia Watson Miner, each took an undivided one-tenth interest.

A decree will be entered in accord with this opinion, and the case then be remanded to the common pleas court for execution.

*Decree for plaintiff.*

MIDDLETON, P. J., and MAUCK, J., concur.