(No. 20411.—)

ROSCOE WYETH *et al.* Defendants in Error, *vs.* JOHN CRANE *et al.* Plaintiffs in Error.

*Opinion filed February 18, 1931.*

JOHN T. KINCAID, and BEN F. ANDERSON, guardians *ad litem*, (A. C. & BEN F. ANDERSON, and HERBERT S. ANDERSON, of counsel,) for plaintiffs in error.

T. N. COFER, for defendants in error.

546

Mr. Justice Orr delivered the opinion of the court:

The defendants in error, Roscoe Wyeth and Paul E. Wyeth, filed their bill in the circuit court of Coles county for the partition of certain lands and the construction of two deeds executed by their grandfather, Samuel Wyeth, conveying in trust the lands involved herein. The minor children of Roscoe and Paul were made defendants and by their guardians *ad litem* demurred to the bill. The demurrers were overruled, proof was taken and a decree entered granting the relief prayed for. From that decree this writ of error is prosecuted.

The sole question before the court is, Did the use of the word "descendants" in the two deeds from Samuel Wyeth to his trustees grant to the minor children of Roscoe and Paul any interest in the lands conveyed?

In 1906 Samuel Wyeth was the owner of several hundred acres of farm lands. He had two living children and some grandchildren by two sons who had died. On September 15, 1906, he deeded an amount of land equal to about one-fourth of his estate in fee simple to each of his two living children, William M. Wyeth and Mary J. Hardin. On the same date he deeded to William and Mary 240 acres of land in trust, upon the following terms: "Reserving to grantor Samuel Wyeth the use, possession and income from said land during his natural life, in trust, for the following purposes: To rent the same at their discretion until March 1, 1920, and therefrom pay all taxes, assessments and repairs deemed necessary by trustees. All expenses and reasonable compensation for services, and the net proceeds of said rental to the descendants of James Wyeth, son of grantors, now deceased, in quarterly payments on first day of March, June, September and December of each year and their receipts should be good without having to go through the form of having a guardian appointed, and on March 1, 1920, said trustees shall deed said land to the descendants of James Wyeth, deceased, and if said descendants are dead

at that time, or any time prior thereto then the title of the land so held by said trustees shall vest absolutely in William M. Wyeth and Mary J. Hardin and their heirs. Said lands or rentals shall not be liable for any debts heretofore or hereafter made by the said descendants of James M. Wyeth, deceased." On September 17, 1906, he made another deed exactly like the first one, except that it conveyed another tract of 280 acres and the date for deeding the land to the "descendants of James Wyeth, deceased," was fixed at March 1, 1925. On September 15, 1906, he deeded other lands not involved herein to the same trustees, with power to rent such lands until a later date, paying the annual rentals to "the heirs of Thomas Wyeth, deceased, * * * and when the youngest child of Thomas Wyeth, deceased, arrives at majority said trustees shall deed said lands to the heirs of said Thomas Wyeth." On the dates of execution of the deeds in 1906 the deceased son James had two children living, Roscoe and Paul, the defendants in error here. They were then minors and both unmarried. The trustees rented the lands after the death of the grantor, which occurred in April, 1907, and settled annually with Roscoe and Paul until March 1, 1920, when they deeded the first 240 acres of land to them in equal parts. At that time Roscoe was married and had one child, James H. Wyeth. Paul was still single. On March 1, 1925, the trustees conveyed the 280 acres to Roscoe and Paul in equal parts. On that date Roscoe was living and had two sons, James H. Wyeth and Jack M. Wyeth. Paul had married in the meantime and had one son, James E. Wyeth. Later, a daughter, Mary G. Wyeth, was born to Paul, but it is conceded that she has no interest in the lands involved.

The word "descendant," as defined in the standard dictionaries and by text writers, means one who is descended lineally from another, to the remotest degree. (Webster's Dict.; New Standard Dict.; Bouvier's Law Dict; 2 Jarman on Wills, (5th ed.) p. 103; 2 Redfield on Wills,

(3d ed.) p. 77; 1 Page on Wills, (2d ed.) sec. 904, p. 1511;
Thompson on Const. of Wills, sec. 186, p. 321.) It is co-
extensive and synonymous with "issue." 1 Page on Wills,
(2d ed.) sec. 904, p. 1511; 2 Jarman on Wills, (5th ed.)
p. 1006; *Bates* v. *Gillett*, 132 Ill. 287.

The meaning of the word "descendants," when used in
a will or deed to designate a class to take property passing
by the will or deed, has been frequently considered and de-
cided by the courts of England and the United States. The
established rule in England from an early date was that
the word "descendants" or the word "issue," unexplained
by anything in the context of the instrument, means all
persons descended lineally from another, to the remotest
degree, and includes persons so descended even though their
parents are living, and that such descendants or issue take
*per capita* and not *per stirpes*. *Butler* v. *Stratton*, 3 Brown's
Ch. 367, decided in 1791; *Davenport* v. *Hanbury*, 3 Ves. Jr.
257, decided in 1796; *Freeman* v. *Parsley*, 3 id. 421, de-
cided in 1797; *Weldon* v. *Hoyland*, 4 DeG., F. & J. Ch. 564.

The courts of this country are divided on the question
whether in case of a gift or conveyance to "descendants" or
"issue," children take concurrently with their parents. The
so-called English rule has been adhered to in New York,
New Jersey and Tennessee. (*Soper* v. *Brown*, 136 N. Y.
244, 32 N. E. 768; *Schmidt* v. *Jewett*, 195 id. 486, 88 id.
1110; *Phelps* v. *Cameron*, 96 N. Y. Sup. 1014; *In re
Cromwell* 142 id. 553; *In re Voight*, 164 id. 738; *Petry*
v. *Petry*, 175 id. 30; *Petry* v. *Langan*, 227 N. Y. 621,
125 N. E. 924; *In re Farmers Loan and Trust Co.* 183
N. Y. Sup. 339; *In re Lawrence's Exrs.* 238 N. Y. 116;
*Price* v. *Sisson*, 13 N. J. Eq. 168; *Weehawken Ferry Co.*
v. *Sisson*, 17 id. 475; *Inglis* v. *McCook*, 68 id. 27; *Se-
curity Trust Co.* v. *Lovett*, 78 id. 445, 79 Atl. 616; *Ridley*
v. *McPherson*, 100 Tenn. 402, 43 S. W. 772; *Lea* v. *Lea*,
145 id. 693, 237 id. 59.) On the other hand, the courts of
Massachusetts, Maine, Rhode Island and South Carolina

have held that in case of a gift or conveyance to descendants or issue, unexplained by anything in the context of the instrument, children do not take concurrently with their parents. *Dexter* v. *Inches*, 147 Mass. 324, 17 N. E. 551; *Hills* v. *Barnard*, 152 id. 67, 25 id. 96; *Jackson* v. *Jackson*, 153 id. 374, 26 id. 1112; *Coates* v. *Burton*, 191 id. 180, 77 id. 311; *Manning* v. *Manning*, 229 id. 527, 118 id. 676; *Ernst* v. *Rivers*, 233 id. 9, 123 id. 93; *Rembert* v. *Vetoe*, 89 S. C. 198, 71 S. E. 959; *Dixon* v. *Pendleton*, 90 id. 8, 72 id. 501; *Duncan* v. *Clarke*, 106 id. 17, 90 id. 180; *Thomson* v. *Russell*, 131 id. 529, 128 id. 421; *Union Safe Deposit and Trust Co.* v. *Dudley*, 104 Me. 297, 72 Atl. 166; *Rhode Island Hospital Trust Co.* v. *Bridgham*, 42 R. I. 161, 106 Atl. 149.

While the decisions of other States on this question are conflicting, this court has previously indicated that children do not take concurrently with their parents where "there is the faintest intention to show that the class—in this case the grandchildren—might be considered as taking *per stirpes* rather than *per capita.*" (*Dollander* .v. *Dhaemers*, 297 Ill. 274, and cases cited.) We believe the correct rule to be, that where a grantor or testator makes a gift to "descendants" or "issue," unexplained by anything in the context of the instrument, children do not take concurrently or *per capita* with their living parents but take *per stirpes*. It is therefore our opinion that Roscoe and Paul E. Wyeth took a vested interest in fee *per stirpes* immediately upon the delivery of the deeds to the trustees in 1906. This harmonizes with the rule favoring the early vesting of estates. The reservation of a life estate in Samuel Wyeth raises a strong presumption that it was intended that the title should immediately vest in the remaindermen, for the reason that if such intention had not existed there would be no reason for the reservation. (*White* v. *Willard*, 232 Ill. 464; *Hill* v. *Kreiger*, 250 id. 408; *Sargent* v. *Roberts*, 265 id. 210.) And this is especially true if the grantees are infants, as

were Roscoe and Paul in 1906, for an acceptance by the trustees for their use will be presumed from the fact that the deed was for their benefit. (*Riegel* v. *Riegel,* 243 Ill. 626.) It is the policy of our law to favor a construction, whether of deed or will, that will vest remainders unless a contrary intention is clearly and expressly indicated. (*Knight* v. *Pottgieser,* 176 Ill. 368; *Poehlman* v. *Leinweber,* 288 id. 58.) No such contrary intention is expressed by Samuel Wyeth in the deeds we have been considering.

The decree of the circuit court is therefore correct and is affirmed. *Decree affirmed.*