# IN RE TRUST ESTATE OF ABIGAIL I. THOMPSON.[1]

May 13, 1938.

Nos. 31,702, 31,703.

[1]Reported in 279 N. W. 574.

*O'Brien, Horn & Stringer,* for appellants.

HOLT, JUSTICE.

This is an appeal from the findings and order construing the will of Abigail I. Thompson.

There is in the hands of the trustee ready for distribution about $2,275,000, under this provision of paragraph XXIV of the will:

"(b) The Trust property shall be held by the Trustees undivided during the joint life of my daughters, said Hazel E. Power and said Florence Wheeler Jefferson, and the life of the survivor of them. So long as they both live, the income thereof, first deducting the sums, if any, paid Mary E. Stewart as above provided [a life annuity of $125 per month], shall be paid over to them annually, or at such shorter intervals as the Trustees shall find convenient, in equal shares. In case the first dying leaves her surviving any lawful issue, whether of the first or succeeding generations, then thereafter so long as any such issue and the remaining daughter shall live, such issue shall receive one-half of the income and the remaining daughter the other one-half. But, in the event such issue of the deceased daughter shall die during the life of the remaining daughter, then thereafter the whole income shall be paid to such remaining daughter until her death.

"Upon the death of the remaining daughter, the property shall be divided and turned over one-half thereof to the living issue of each daughter, if there then be such issue of each, whether of the first or succeeding generations. But, if there then be such issue of one daughter only, that issue shall take the whole of the Trust estate."

The trustee petitioned the court to determine who took under the will on the death of Hazel E. Power, the survivor of the two

daughters. At the time of this daughter's death all her six children were living, one of these, Abbie, being married and having two children, Fletcher G. Driscoll and Charles P. Driscoll, minors. The only children of the daughter Florence W. Jefferson were also living, *viz.*, Rufus Jefferson and Florence Jefferson Graef, the latter being married and having a daughter, Florence Graef. These parties appeared and answered, the minors by guardian *ad litem*. The children of the two daughters claimed to be the distributees to the exclusion of the three grandchildren, and the latter claimed as *per capita* distributees equally with their living mothers. The court excluded the three grandchildren and directed the trustee to turn over and distribute one-half of the trust estate in equal shares to each of Hazel E. Power's six children, and one-half of the trust estate in equal shares to the two children of Florence W. Jefferson, and directed the guardian *ad litem* of the grandchildren to appeal. Hereinafter the grandchildren will be referred to as appellants and the children of the two daughters as respondents.

The primary object in the construction of a will is to ascertain the intent and meaning of the testator. In so doing certain rules of construction derived from experience have been found helpful and have been made use of by the courts where the language employed is obscure. Buck v. Huntley, 151 Minn. 446, 187 N. W. 411. The parties are in agreement that the beneficiaries of this trust estate living on November 3, 1937, at the death of the survivor of the life tenants, took a vested interest. The controversy is as to whether the great grandchildren of testatrix took with their living mothers. In construing a will it is permissible to take into consideration the situation of the testator at the time it was made and also whether it was drawn by one learned in the law. There is here not much to be found aside from the will itself to indicate the situation in which Mrs. Thompson found herself. She had the aid of a skilled lawyer. From the document itself it is perceived that Mrs. Thompson was a person of affluence. She had had no children, but had adopted two nieces. She reared and treated them as if they had been her own children, and they were known by others as her children. This will was made March 16, 1923, and the last

codicil September 11, 1923. Mrs. Thompson died September 20, 1923. It is to be inferred, therefore, that she was stricken with a fatal malady at the time the will was drawn and that she then knew that she could not long survive. Her daughters were both married and had children. She disposed of a generous portion of her great fortune by bequests which took effect upon her death. The will contains 23 clauses or paragraphs of such bequests. To each then living grandchild some mementos, from that of a Chickering piano to various and many kinds of jewelry and personal keepsakes of herself and deceased husband, were given. She seemed to have attempted an equal division between her daughters of her extensive furniture, rugs, household goods, silverware, works of art, and jewelry, and provided that either daughter might, if she so desired, purchase the homestead at such price as the trustee might fix, one-half such price to be deducted from the share that would go to her issue of the trust estate and credited to the share going to the issue of the other daughter, with adjustment of interest during the trust period.

At the time the will was made Hazel E. Power was 35 years old, married, and the mother of five children, and Florence W. Jefferson was 33 years old, married, and the mother of two children. It may be said that Mrs. Thompson adopted the stirpital plan to dispose of the property placed in the trust, for it was to be distributed one-half thereof to the issue of each daughter, although one daughter had five children and the other only two. It is true that the word "issue" must be given the meaning of lineal descendants as defined by 2 Mason Minn. St. 1927, § 10933(8). But that statutory definition by its terms relates to the descent of estates of intestates and does not pertain to the interpretations of wills or deeds of trust. And when it comes to our statutes of descent of the estates of intestates it is plain that issue take *per stirpes* and not *per capita*, except when the property descends to next of kin, in which case those in equal degree take *per capita*. (2 Mason Minn. St. 1927, §. 8720, par. 5.) No doubt Mrs. Thompson when she made the will entertained the hope that her daughters, then young, might live to good old age. More children might come to them, and some of

these might die before the death of their mothers, leaving children. To make doubly sure that such great grandchildren bereft of their mother should share, the words "whether of the first or succeeding generations" were employed. It is not likely that by the use of that phrase Mrs. Thompson intended to have great grandchildren take equally with their living parent. Such a result courts are reluctant to arrive at in the construction of wills unless the intention is clearly expressed that children or issue take equally with a living parent. In Ernst v. Rivers, 233 Mass. 9, 14, 123 N. E. 93, 95, the court construes lineal heirs as equivalent to lineal descendants or issue, saying:

"Where a gift is made to members of a class described as 'heirs' or 'issue' in accordance with the rule last above stated it is held that grandchildren and their descendants will not be allowed to compete with their parents unless such was· the intention of the testator."

The statute governing the descent of the estates of intestates may in case of doubt be resorted to as an aid in the construction of a will. Staubitz v. Lambert, 71 Minn. 11, 73 N. W. 511. There can be no doubt that under our statutes such estates descend to issue or lineal descendants *per stirpes* or by representation. 2 Mason Minn. St. 1927, § 8720.

The appellants rely on the so-called English rule, and claim that at the time this will was drawn· the great majority of courts in this country were in accord with that rule, and it must therefore be assumed that the skilled lawyer who drew this will had knowledge of the law as then declared and designedly employed language to conform with the weight of authority. Appellants' counsel concede that of recent years more of the courts have come to the view of the Illinois and Massachusetts courts as expressed in Wyeth v. Crane, 342 Ill. 545, 174 N. E. 871, and Jackson v. Jackson, 153 Mass. 374, 26 N. E. 1112, 11 L. R. A. 305, 25 A. S. R. 643. It is to be noted that there is no sharp distinction in the two lines of interpretation. The English courts, in the early decisions, freely admitted that the construction given in all probability frustrated the intention of the

testator; but, since wills often included real property, the rule of Shelley's Case troubled and influenced their decisions. Also, some wills contained provisions that ran counter to the law against perpetuities. Even in England the courts search for indications of a stirpital distribution so as to prevent children sharing *per capita* with living parents. Coulden v. Coulden [1908] 1 Ch. 320; In re Hammond [1924] 2 Ch. 276. In Coulden v. Coulden, where the will, upon the death of either of the two named executors, directed the survivor to sell all of testator's property [1 Ch. 323, 326] "and cause the same to be equally divided amongst my then surviving children and their respective issue," the court held that the gift to the issue "is alternative though original, and that the issue of children living at the period of distribution do not take concurrently with such children." Hence the trust estate was divided into as many parts as there were children who survived the period of distribution or predeceased that period leaving issue who so survived, such surviving issue in each case taking the share which the child so dying would have taken had he or she survived the period of distribution. In the annotations to Re Estate of Mayhew, 307 Pa. 84, 160 A. 724, and Northern Trust Co. v. Wheeler, 345 Ill. 182, 177 N. E. 884, in 83 A. L. R. 164, the divergent views are stated with citations too numerous to refer to or discuss in an opinion. However, the following may be cited as supporting our conclusion that Mrs. Thompson's intention was that the issue of each daughter was to take the one-half of the trust estate of which such daughter was the life beneficiary *per stirpes* and not *per capita*. That is, no child of a living grandchild of Mrs. Thompson could take with its living parent, but children of a deceased grandchild could take the share their parent would have taken if living at the death of the surviving daughter. In these decisions many prior decisions in the same and other jurisdictions are cited and discussed. The language of the wills involved may vary somewhat from that in the one at bar; but they are deemed sufficiently similar to serve as illustrations of the construction given the will involved; Stamford Trust Co. v. Lockwood, 98 Conn. 337, 119 A. 218; Wilmington Trust Co. v. Chapman, 20 Del. Ch. 67, 171 A. 222 (affirmed on appeal without opinion, 20 Del. Ch. 454, 180 A. 927);

Wyeth v. Crane, 342 Ill. 545, 174 N. E. 871; Smith v. Thom, 158 Ky. 655, 166 S. W. 182; Union S. D. & T. Co. v. Dudley, 104 Me. 297, 72 A. 166; Manning v. Manning, 229 Mass. 527, 118 N. E. 676; Ernst v. Rivers, 233 Mass. 9, 123 N. E. 93; Watson v. Watson, 34 Ohio App. 311, 171 N. E. 257; Mayhew's Estate, 307 Pa. 84, 160 A. 724, 83 A. L. R. 149; Rhode Island Hospital Trust Co. v. FitzGerald, 49 R. I. 319, 142 A. 330; Lea v. Lea, 145 Tenn. 693, 237 S. W. 59; Will of Morawetz, 214 Wis. 595, 254 N. W. 345.

Of course courts should not by construction remake a will or pervert the meaning of the language used. And we find that courts not in harmony with the so-called English rule nevertheless apply it where language is found in the will indicating an intention that children should take equally with their living parents. Northern Trust Co. v. Wheeler, 345 Ill. 182, 177 N. E. 884. On the other hand, courts said to follow the English rule also look for indications in a will which exclude children to take concurrently with a living parent. In In re Farmers' Loan & Trust Co. 213 N. Y. 168, 107 N. E. 340, 2 A. L. R. 910, the New York court, before the enactment of the statute of that state which affects the construction of wills, from very slight indications in the will found that issue took *per stirpes* and not *per capita*.

In Mrs. Thompson's will "issue" was evidently not used as meaning the same as "heirs," for in the bequests made to take effect at the death of testatrix the latter word is used. In no prior decision has this court had occasion to consider the so-called English rule. Appellants rely somewhat on In re Estate of Fretheim, 156 Minn. 366, 367, 194 N. W. 766, but the main point there was whether the will, which bequeathed testator's property "to my legal heirs according as the law provides," vested as the statute prescribed when the will was made or as it prescribed when testator died. And it was held that the statute in force at the time of testator's death governed. Subsidiary propositions decided were that by our statutes now in force both the personal and the real property of an intestate descend under the same rule and that testator's nephews and nieces took *per capita* under the law reading [156 Minn. 369]:

"If the intestate leaves neither issue, spouse, father, mother, brother nor sister, his estate shall descend to his next kin in equal degree."

The testator's next of kin were nephews and nieces—next of kin in equal degree. Children of deceased nephews or nieces would not be next of kin of equal degree with their uncles or aunts. It cannot be assumed that "issue" as used by Mrs. Thompson was intended to designate a class. As already stated, the life beneficiaries were comparatively young women, married, and of many years of child-bearing capacity. The trust was to endure during the life of the survivor, and it might well be anticipated that there might be no distribution for 40 or even 50 years. Could Mrs. Thompson have intended that the then living issue of each daughter would take *per capita* as a class? It is highly improbable. In Hoadley v. Beardsley, 89 Conn. 270, 276, 93 A. 535, 538, where the will directed that 25 years after testatrix' decease, the estate "shall be equally divided by the trustee, between the legal issue of my said nephews and of my said niece, Ella A. Treat," the court took into consideration the change that time might cause in issue or descendants during a long period, saying [89 Conn. 278]:

"It is scarcely conceivable that the testatrix contemplated such a division among the issue of the nephews and niece, whatever the degree of their relationship might be. The will directs a postponement of the time of the division for twenty-five years after the testatrix's death. Thirteen children of the nephews and niece were living when the will was made. Children of these children, and of others yet unborn, might, in the natural order of events, be expected to come into being in no small numbers before the end of the twenty-five year period. If the class of distributees was to be formed of issue without restriction in the matter of degree, it might well become one of formidable proportions, and its membership be comprised of representatives of one parental stock, and only one or few of others. Mrs. Merrill's testamentary scheme could hardly have contemplated an equal division among the members of a class thus formed. The equal division she had in mind must

have been between issue of equal degree, and that unmistakably spells children."

So issue was construed to mean children. We think Mrs. Thompson must have meant the same in her will. As all the children of each daughter were living when the trust estate was to be distributed, they took the whole thereof; and appellants could not share concurrently with their living parent.

The construction of the court below is affirmed.

Mr. Justice Stone took no part in the consideration or decision of this case.

