(Nos. 20636, 20673.—

The Northern Trust Company, Trustee, *et al.* Appellees, *vs.* Arthur Wheeler *et al.*—(Henry Irving Wheeler, Appellant.)

*Opinion filed June 18, 1931—Rehearing denied October 13, 1931.*

Frederick A. Brown, Robert X. Kuzmier, and William G. Worthey, for appellant.

Scott, MacLeish & Falk, (Leland K. Neeves, of counsel,) for appellees Lewis E. Wheeler *et al.;* Church, Haft, Robertson & Crowe, and Holman D. Pettibone, guardian *ad litem,* (Egbert Robertson, of counsel,) for appellees Winifred Wheeler *et al.;* Isham, Lincoln & Beale, for appellee the Northern Trust Company, trustee; and Henry G. Miller, guardian *ad litem,* (Claude H. Coon, of counsel,) for certain minor appellees.

Mr. Justice Dunn delivered the opinion of the court:

The decree which is brought before us for review by this appeal was rendered by the circuit court of Cook county upon a bill filed by the Northern Trust Company, as trustee under the will of Charles W. Wheeler, praying for the instruction of the court as to the persons to whom the residuary estate should be distributed under the fourth article of the will. The testator died on March 14, 1902, having executed a will on January 10, 1900, which was admitted to probate and record on April 10, 1902. It disposed of a large estate, composed of both real and personal property, which was of the value of $1,500,000 when this bill was filed, on October 10, 1929. The will, after nominating the testator's brother Arthur as executor without bond, directing the prompt payment of his debts and funeral expenses

and bequeathing $50,000 to each of his three living brothers and to the respective descendants (living at the testator's death) of such of his brothers as should die before that event, devised by its fourth article all the residue of his estate to his brother Arthur, to manage and control, to receive the rents, income, dividends and profits, to pay expenses and taxes, to pay all the net income to the testator's wife during her life and upon her death to distribute the trust estate then remaining in the manner directed by article 4, which directs that an amount not exceeding $100,000 shall be paid and turned over or distributed to whomsoever and in whatsoever amounts and manner the testator's wife might by her will appoint. The remainder of the trust estate was disposed of by this fourth article as follows: "All the rest, residue, and remainder of my said residuary estate I direct said trustee to turn over and distribute in equal parts to my brothers who may be living at the time of such distribution, and to the descendants of such of them, (including descendants of my said brother, George Henry Wheeler,) as may have died leaving any descendant or descendants him or them surviving, the descendants of a deceased brother in each case to take *per capita* and not *per stirpes* the share to which such deceased brother would have been entitled if living." This is the language which the bill sought to have construed.

At the time of the execution of the will the testator had three living brothers, Frederick A., Eugene and Arthur, and one brother, George H., had died a few months before. He had no sister, and his brother Frederick A. died before the testator. Eugene survived the testator and died in 1918. Arthur is still living and is a bachelor. He accepted the trust under the will and for a time acted as trustee. He afterward resigned, and the complainant, the Northern Trust Company, accepted the trust in his stead and has been acting as trustee since January, 1905. Adeline Wheeler, the testator's wife, died on June 1, 1929, and by this event the

time for the distribution of the trust estate was fixed. The original beneficiaries of the trust have all died but Arthur. He and all the descendants of the three brothers of the testator, who left descendants, including children, grandchildren and great grandchildren, were made parties to the bill. Eugene Wheeler, who survived the testator, died in 1918. He left one son, Robert C., who died in 1928, leaving two children, Winifred and Robert T., and a will, in which the residuary devisees are these two children and their mother, Lydia T. George H. Wheeler, who died before the execution of the will, left a son, Henry L., who died in 1914, leaving a son, Henry I., who is living and is the appellant. George H. also left a daughter, Mary W. Young, who died in 1915, leaving two children, Henry W. Young and Alice Y. Baldridge, and Alice has two children, Jean and Russell Y. Frederick A. Wheeler, the fourth brother, died in the testator's lifetime, and his descendants who were living at the time of the death of Adeline Wheeler are two sons, Clarence A. and Lewis E., seven grandchildren, three the children of Clarence A., two the children of Lewis E. and two the children of Augustus L., a deceased son of Frederick A., and three great-grandchildren, whose parents are still living.

The decree declared the true construction of article 4 of the will to be that the period of distribution is the date of the death of Adeline Wheeler, June 1, 1929; that the persons to whom distribution of the residue of the trust estate should be made are Arthur Wheeler, the only brother of the testator living at the period of distribution, and all of the lineal descendants of every degree who were living on June 1, 1929, of George H., Eugene and Frederick A., the testator's three brothers who died prior to June 1, 1929; that in distributing *per capita* among the descendants of any one of the three deceased brothers, the one-fourth interest in the residue of the trust estate to which such deceased brother would have been entitled if he had been liv-

ing on June 1, 1929, distribution should be made to every grandchild and to every great-grandchild of such deceased brother, whether or not his or her parent, being a child or a grandchild of such deceased brother, was living on that day; that no interest in the residue of the trust estate vested upon the death of the testator in any brother him surviving or in the issue of any deceased brother of the testator, and that no interest in the residue of the residuary trust estate vested upon the death of any brother of the testator in the surviving child or children or in the issue of any deceased child of such deceased brother, but that all interests in such residue remained contingent until June 1, 1929, when all such interests became vested, subject to no divestment in favor of any descendant born thereafter; that distribution of a one-fourth interest in the residue of the trust estate should be made to Arthur Wheeler; of a one-fourth interest *per capita* to Henry I. Wheeler, Henry W. Young, Alice Y. Baldridge, Jean Baldridge and Russell Y. Baldridge, descendants of George H. Wheeler; of a one-fourth interest *per capita* to Winifred and Robert T. Wheeler, descendants of Eugene Wheeler; of a one-fourth interest *per capita* to Clarence A. Wheeler, Lewis E. Wheeler, Dorothy W. Stemler, Marguerite W. Robison, Herbert H. Wheeler, Charles C. Wheeler, Gladys W. Walker, Archibald G. Wheeler, John K. Wheeler, Arthur W. Stemler, Robert E. Stemler and Patricia J. Walker. Henry I. Wheeler appealed separately from the decree, and Lewis Ellis Wheeler, Marguerite Wheeler Robison, Dorothy Wheeler Stemler and Henry Wheeler Young appealed jointly. These two appeals have been consolidated.

The estate devised to the testator's brothers and their descendants was contingent, for the direction was to distribute to such of the brothers as might be living at the time of distribution and to the descendants of such as might have died leaving descendants surviving, and until the time for distribution arrived there were no means of ascertain-

ing the persons who were to take. (*Brechbeller* v. *Wilson,* 228 Ill. 502; *Millikin Nat. Bank* v. *Wilson,* 343 id. 55.) "A remainder is contingent if, in order for it to become a present estate, the fulfillment of some condition precedent, other than the determination of the preceding freehold estates, is necessary." Gray's Rule Against Perpetuities,— 3d ed.—sec. 9; *Baley* v. *Strahan,* 314 Ill. 213.

Under the decree Arthur Wheeler will receive one-fourth of the residuary estate and Winifred Wheeler and Robert T. Wheeler, the grandson and grand-daughter of Eugene Wheeler, and his only descendants, will each receive one-half of the one-fourth which Eugene would have received had he survived the testator. The will by which Robert C. Wheeler, their father and Eugene's son, devised the residue of his estate to them and to their mother was of no effect to transfer any interest under Charles W. Wheeler's will because such interest was wholly contingent, and whatever interest the children have in the property came to them directly through Charles W. Wheeler's will. The only controversy in the case, therefore, is in regard to the two shares, each, of one-fourth of the residuary estate given originally to George H. and Frederick A. Wheeler, but each of which, because of the death of the original devisee, was directed to be given to the surviving descendants of the original devisee, who were directed "to take *per capita* and not *per stirpes* the share to which such deceased brother would have been entitled, if living." The question presented for decision and argued is whether all the descendants, in whatsoever degree, of each of these two deceased brothers take concurrently and are entitled to an equal distribution *per capita* of the share which their respective ancestors would have received if they had lived until the date of distribution, or whether the rights of the descendants accrue in succession *per stirpes* by way of representation and substitution. The consideration of questions of this character has resulted in a contrariety of decision among the courts

of various jurisdictions. The meaning of the word "descendant" is not doubtful. It includes all persons who proceed from the body of the person named and is co-extensive with issue. (*Bates* v. *Gillett,* 132 Ill. 287; *Wyeth* v. *Crane,* 342 id. 545.) The question whether in a gift to descendants all take concurrently—that is, each individual of the stock takes an equal share with all the rest—or those in more remote degrees only as representative of and in substitution for deceased parents, has frequently arisen, and in England the rule has been established that under a gift to descendants equally, each individual of the stock takes an equal share concurrently with and not in the place of his parent, and even where the gift is to descendants, simply, the same rule prevails unless the context indicates that the testator had a distribution *per stirpes* in view. (2 Jarman on Wills,—5th Am. ed.—634.) In this country the decisions of the courts of the different States are not in harmony. The question received consideration at the last February term in the case of *Wyeth* v. *Crane, supra.* In the opinion in that case the rule adopted in England was stated as well as the differing rules prevailing in various States of the Union, and the authorities by which the courts of those jurisdictions sustain their decisions were cited. The conclusion arrived at was, that in this State children do not take concurrently or *per capita* with their living parents in a gift to "descendants" or "issue," unexplained by anything in the context of the instrument, but take *per stirpes*. This was in accord with the dictum of Chancellor Kent in a note to volume 4 of his Commentaries, page 278, that "the term 'issue' may be used either as a word of purchase or limitation but it is generally used by the testator as synonymous with 'child' or 'children.'" Judge Redfield also was of the opinion that most testators employ the term "issue" in the sense of descending heirs. (2 Redfield on Wills, 42.) Lord Loughborough expressed regret that there was no medium between total exclusion of grandchildren and allowing them

to share equally with their parent. (*Freeman* v. *Parsley*, 3 Ves. 420.) However, he followed the rule requiring a distribution among the issue *per capita* and not *per stirpes*.

Whatever opinion a judge may have in regard to the intention of a testator which he has not expressed by the language he has used, it is not within the rules of construction for him to apply to the words which the testator has used any other than their natural meaning, unless it is justified by a special context. The generality of the word "issue" or "descendants" may be restrained if the testator explains that he meant something else than the usual meaning of those words, as, for instance, that he meant "children" by the use of the word coupled with father, or mother, or parent, or other context. The conclusion that in this State children do not take concurrently or *per capita* with their living parents in a gift to "descendants" or "issue," unexplained by anything in the context of the instrument, but that "descendants" under such circumstances take *per stirpes*, is no more than a rule of construction in the ascertainment of the intention of the testator. It is not a rule of law like the rule in *Shelley's case*, which will be enforced contrary to the express intention of the testator and in spite of the express declaration in the instrument that an ancestor shall have an estate for life and no longer; that he shall have only a life estate in the premises and that after his death it shall go to the heirs of his body and in default of such heirs vest in the person next in remainder; that the ancestor shall have no power to defeat the intention of the testator; that the ancestor shall be tenant for his life and no longer, and that it shall not be in his power to sell, dispose of or make away with any part of the premises. (*Carpenter* v. *VanOlinder*, 127 Ill. 42.) The rule of construction in regard to the use of the word "issue" or "descendants" is not such a rule, but is a mere guide in the construction of wills to find what has been declared to be the polar star in the interpretation of

wills—the intention of the testator, gathered from the words and expressions used in the will itself, read in the light of all its different provisions and parts, construing the words and expressions in their ordinary purport and common acceptation, unless it clearly appears in the will that they are used in a different sense.

This statement finds support in the case of *Poehlman* v. *Leinweber*, 288 Ill. 58, where a deed was made to John and Elizabeth Leinweber, husband and wife, for John's life and Elizabeth's widowhood, if she survived him, "with remainder over to the children and their descendants of the said John E. Leinweber" upon the death of both of the grantees. At the date of the deed there were nine children, none of whom had issue, and later two more children were born to the grantees. One son, Henry, died leaving five minor children. The husband, John, died leaving ten children and five grandchildren, the children of his deceased son. The widow also survived him. Nine of the ten surviving children had children born to them who were living. One had no children. The ten children filed a bill for partition, subject to the widow's estate during her widowhood, alleging that they were each entitled to one-eleventh of the premises, and the five grandchildren, the children of their deceased brother, were entitled to the other eleventh, or one fifty-fifth part each. The bill further alleged that all the children of the complainants claim an interest in the premises under the deed as descendants of their parents and prayed to have the deed construed and the title freed from the cloud created by the claims of the complainant's children. A guardian *ad litem* was appointed for the complainants' minor children and another for the minor children of Henry Leinweber. A decree was entered in accordance with the prayer of the bill, from which the children of the complainants appealed. In affirming the decree the court held the words "and their descendants" to be words of purchase, and that it was possible for the descendants of John E. Leinweber

to take concurrently with their parents, or in succession to their parents or in substitution for deceased parents, and unless the instrument creating the estate indicates a contrary intention the descendants would take by substitution, only, and not in competition with their parents living at the time of distribution.

Whether the presumption in the case of a devise to "descendants," unexplained, is that all descendants to the remotest degree are included even though their parents are living, and that such descendants take *per capita* concurrently with their living parents and not *per stirpes,* or whether in such case the presumption is that only descendants whose ancestors in the line of succession are dead are included and that they take *per stirpes* and not *per capita,* the question is, What was the intention of the testator as expressed in the words of his will? When that intention is ascertained there is no room for presumption. If the language of the will indicates the intention of the testator that the living descendants of each of his brothers who should be dead at the time of distribution should take *per capita* and not *per stirpes,* that intention must be given effect. The only language in the will affecting this question of the intention of the testator in regard to the division of the share to which each deceased would have been entitled if living is the following: "to the descendants of such of them, (including descendants of my said brother, George Henry Wheeler,) as may have died leaving any descendant or descendants him or them surviving, the descendants of a deceased brother in each case to take *per capita* and not *per stirpes* the share to which such deceased brother would have been entitled if living." The Illinois law favors such a construction of a devise to descendants as will cause the division among descendants *per stirpes* and not *per capita,* but it is the intention of the testator which must govern, and when his will directs that the descendants shall take the share to which the ancestor would be entitled if living,

*per capita* and not *per stirpes,* we cannot say that the share shall be taken by the descendants *per stirpes* and not *per capita* or in part *per stirpes* and in part *per capita.* The language seems to be peculiarly adapted to express the intention and not adapted to express anything else. "The descendants," unless restricted by other words or context, means all the descendants, and there is no ambiguity about *"per capita"* or *"per stirpes."* The testator is presumed to have known the meaning of the terms used, and his language plainly expresses an intent for all the descendants of each deceased brother to share *per capita* the part of the estate which the deceased brother would have taken if alive, and he had a perfect right to declare to whom this part of the estate should go. We have no right to make a new will for him.

It is said that whether the construction placed upon the will by the chancellor was or was not permissible, it is essentially unreasonable and one not in conformity with the Statute of Descent in Illinois. A will need not be in conformity with the Statute of Descent, and, in fact, the object in making a will is to provide for the descent of property in a manner different from that provided by the Statute of Descent and in conformity with the intention of the testator.

It is argued that the words *"per capita* and not *per stirpes"* merely denote an equal division among members of the class, (descendants,) the class being otherwise determined. The class is determined by the words of the will "the descendants of a deceased brother," as qualified by the words in regard to the manner of division, "the descendants of a deceased brother in each case to take *per capita* and not *per stirpes* the share to which such deceased brother would have been entitled if living," and all descendants are included and take *per capita.*

The appellants, and the appellees who want the decree reversed, rely upon *Wyeth* v. *Crane, supra, Kelley* v. *Vigas,* 112 Ill. 242, and *Proctor* v. *Lacy,* 263 Mass. 1, as clearly

authorizing the construction of the will of Charles W. Wheeler for which they contend. *Wyeth* v. *Crane* merely declares a rule of construction in the case of a gift to "descendants" or "issue," unexplained by any context of the instrument. *Kelley* v. *Vigas* held that a devise by a testator of "the remainder of my estate to be divided equally among my heirs-at-law," his heirs being a living daughter and four grandchildren, the children of a deceased son of the testator, required a division among the heirs, as in case of intestacy, *per stirpes* and not *per capita.* The court stated that the will required reference to the statute to ascertain who were the heirs-at-law of the testator, and when that was the case the rule was that the statute also determined the quantity each heir should take, citing *Richards* v. *Miller, 62* Ill. 417, and distinguishing *Pitney* v. *Brown,* 44 Ill. 363. In the former case the will of the testatrix devised "to my heirs-at-law the remainder of my estate." She died leaving a husband and collateral heirs, only, and the court announced the rule that when gifts by will to heirs-at-law are made to them *simpliciter,* the persons to take, and the proportions, must be determined by the statute of distribution. In the other case the devise was in the following language: "The balance remaining of said fund I hereby direct shall be equally divided between the children of my late brother, Mahlon Pitney, and my brother-in-law, William H. Brown, of the city of Chicago, a large portion of my property having been received through his father and the father of my late wife, Betsey H. Pitney." The court regarded the rule as having been so often decided by the courts both of England and of this country that. there was an established canon of interpretation in regard to these words from whose authority the court did not feel at liberty to depart, and continued: "The rule is thus stated by Jarman (vol. 2, p. 111): 'When a legacy is to the children of several persons they take *per capita* and not *per stirpes.* The same rule applies when a bequest

is made to a person described as standing in a certain relation to the testator and to the children of another person standing in the same relation, as, to my brother A and the children of my brother B, in which case A takes only a share equal to that of one of the children of B.' " These cases have been repeatedly cited and followed.

The case of *Proctor* v. *Lacy, supra,* holds that the statute of distribution of Massachusetts cannot be considered as a distribution equally *per capita* except in case the heirs happen to be in equal degree of kindred to the testator; that in all other cases the distribution is *per stirpes* or by right of representation, and that the direction that an estate be divided equally *per capita* is not consistent with but opposed to a division of the estate *per stirpes.* (*Russell* v. *Welch,* 237 Mass. 261.) One question in the case was the division of that part of a trust fund in regard to which the trust had ceased to exist and which was required to be presently distributed. The provision of the will in regard to the portion of the trust fund which under the terms of the trust had ceased to exist, was, that when the trusts, or any of them which had been created under the will, ceased to exist the trustees should "convey, transfer, distribute and divide, freed and discharged of all trust, in equal shares *per capita,* to and between my legal heirs then surviving, who are to be determined by the laws of Massachusetts relating to the descent and distribution of property as then in force, always, however, excepting therefrom in such distribution Charles O. Whitten, my nephew, and he not surviving the issue, if any, of said Charles O. Whitten." The court said that the testator's evident intention was that for this purpose his heirs should be determined at the time of distribution rather than at the time of his own death, and that so much of the residue as was not needed to support the trusts remaining and to carry out the other duties of the trustees should be distributed among the persons so determined. The testator's heirs-at-law as determined by the

laws of Massachusetts at the time were four nephews, three grand-nephews, children of a deceased niece of the testator, and a grand-nephew and grand-niece, children of another deceased niece. Two of the nephews were children of the brother who died before the testator, and the other two were children of a sister who survived the testator. One of the two nephews, children of the brother, was the Charles O. Whitten who was disinherited. The direction in the will that the legal heirs, with the exception of this one, were to be determined by the laws of Massachusetts relating to the descent and distribution of property necessarily meant that three nephews, the four grand-nephews and the grand-niece were to share in the property. The judgment of the trial court was that all of these heirs should take in the proportion in which heirs inherit intestate property, and ordered that each of the three nephews should receive one-fifth, each of the two children of one of the deceased nieces one-tenth, and each of the three children of the other deceased niece one-fifteenth. The controversy was between the grand-nephews and grand-niece on one hand and the nephews on the other, the former contending that the testator intended that each of his legal heirs should have the same share of his estate as every other heir received and that each should be given one of eight equal parts. The Supreme Judicial Court sustained this contention and modified the decree of the trial court accordingly. The court said that the reference to the word "heirs" in the will had been many times held to show that the testator intended to incorporate into it the statute providing for the descent of the real estate of an intestate unless a different intention appeared; that a division of an estate *per capita* means by the number of individuals share and share alike as opposed to a division *per stirpes*, where those of more remote degree of kindred to the testator or intestate take by right of representation; that the statutory provisions for the descent or distribution of intestate property cannot be considered as

a distribution equally *per capita* except in case the heirs happen to be in equal degree of kindred to the testator. In all other cases the distribution is *per stirpes* or by right of representation. The direction that an estate be divided equally *per capita* is not consistent with, but opposed to, a division of the estate *per stirpes,* citing *Russell* v. *Welch, supra.* The court further said: "Persons are supposed to know the meaning of the terms they use unless there is something to show the contrary. (*Siders* v. *Siders,* 169 Mass. 523.) When the testator used the words '*per capita*' with the words 'in equal shares' he clearly expressed the intention that each beneficiary was to take in his own right as an individual and not by right of representation. The words used are not susceptible, standing by themselves, of any other interpretation.' (*Russell* v. *Welch,* 237 Mass. 261, 263.) We think that the language of the will shows that the testator referred to the laws of Massachusetts relating to the descent and distribution of property for the purpose of determining the individuals who would be entitled to share in the distribution, and that by using the words 'in equal shares *per capita*' he directed that each of the persons so determined should receive a share of the estate to be divided equal to the share received by each of the others. This interpretation of the will gives a natural meaning to all of the words used and in our opinion will accomplish the purpose of the testator."

Counsel argue that nothing of any substantial nature is added to the words "*per capita*" by the addition of the words "and not *per stirpes.*" Perhaps not, yet they seem to emphasize the intention of the testator that all the descendants of each deceased brother shall participate equally in the share of such brother and that all partition *per stirpes* shall be denied. Insistence of those arguing for a reversal of the decree that those who are to participate in the estate may do so *per stirpes* although amongst themselves the estate of their ancestor is to be divided *per capita* is entirely

inconsistent with the expressed intention of the testator that the descendants shall take *per capita* and that there shall be no taking *per stirpes*.

This disposes of all the objections taken to the decree. It will be affirmed.

*Decree affirmed.*