First Union Trust and Savings Bank, Appellee, v.
Robert Sherman Marshall et al., Defendants.
Appeal of Marcia Vetes Mooney et al., Appellants.

Gen. No. 36,527.

Opinion filed May 8, 1933.

Fyffe & Clarke and Charles H. Goggin, for appellants; John Harrington, Charles H. Goggin and A. E. Butterfield, of counsel.

White & Brewer, for defendants George Gorham Hester, Helen Virginia Hester King, Ezra Gorham Hester and Mabel Hester.

B. L. Farmer, for appellee defendants Alexander M. Blair, Milton Marshall and Mary Wheeler.

Mr. Justice O'Connor delivered the opinion of the court.

Complainant, the First Union Trust and Savings Bank, as trustee named in the last will and testament of Anna E. Marshall, deceased, filed its bill to construe the residuary clause of the will, which is as follows: ''All the rest, residue and remainder of such property, including any lapsed bequests, shall be divided in equal parts among the nephews and nieces of my said husband, then living, and the children or children of children, if any, of such as may be dead, *per capita* and not *per stirpes.*'' The case was heard before the chancellor and a decree entered. Some of the defendants being dissatisfied with the share of the property awarded to them, prosecute this appeal; others of the defendants who were to receive nothing under the decree have assigned cross-errors. The complainant, the trustee designated in the will, apparently with a view of being entirely impartial, has taken no part in this court. The evidence, which is uncontradicted, shows, and the court found, that there were seven living nephews and nieces, 10 children of four deceased nephews and nieces, and two grandchildren of such deceased nephews and nieces, who were entitled to share in the property disposed of by the testatrix in the residuary clause above quoted, and that the residue of the estate should be divided among these 19 persons in the following proportions: Seven-elevenths to the seven living nephews and nieces in equal parts and four-elevenths equally among 10 children and two grandchildren of deceased nephews and nieces. There were other grandchildren of the four deceased nephews and nieces whose parents were living, and it was held by the chancellor that they had no interest in the

residue of the estate. Four of these grandchildren have assigned cross-errors.

Of course the purpose in construing a will is to ascertain the intention of the testatrix, and in the instant case the intention of the testatrix must be determined solely from the language she used in the will; there is no extrinsic evidence that would throw any light on her intention. We think the residuary clause is free from ambiguity. It provides that the property disposed of by that clause "shall be divided in equal parts among the nephews and nieces of my said husband, then living, and the children or children of children, if any, of such as may be dead, *per capita* and not *per stirpes*." By this language the property disposed of by this clause should be divided in *equal parts,* among: (1) The living nephews and nieces of her deceased husband; (2) among the living children of any nephew or niece that had died, and (3) among the grandchildren of any deceased nephew or niece. When these classes of persons are ascertained the property is to be divided equally among them. This is what the language says, and as if to emphasize this fact the testatrix then added that the division was to be made *"per capita"* and not *"per stirpes."* The phrase *per capita* means that the persons designated are to share by heads—share and share alike; while the phrase *per stirpes* signifies that particular descendants shall take among themselves the share of their deceased parent.

In the instant case if the testatrix had transposed the two phrases *"per capita"* and *"per stirpes"* this undoubtedly would cause us to follow the construction placed upon the will by the chancellor, as this transposition would be more than "a very faint glimpse of a different intention" of the testatrix. It may well be that the scrivener, in drawing up the will, inadvertently transposed the two phrases, but in the absence of any evidence we must construe the will as we find it.

While each of the phrases *per capita* and *per stirpes* has a well defined and understood meaning and may properly be used when carefully thought about, yet we think these phrases are sometimes misapplied, often invite confusion, and the use of them ought to be discouraged; similarly, the use of the Latin phrases *in para delicto, res ipsa loquitur, in haec verba, res gestae,* and others; and while none of these has such a well defined meaning as the phrases *per capita* and *per stirpes,* yet we are of the opinion that the use of these and similar phrases is often harmful because it invites confusion and uncertainty. This is shown by briefs and arguments of counsel and in the opinions of courts. Dean Wigmore, in vol. 3 of his work on Evidence (2nd ed.) sec. 1767, discusses the history and use of the phrase *res gestae* and concludes that it should never be used; that "No rule of evidence can be created or applied by the mere muttering of a shibboleth. . . . . An empty phrase so encouraging to looseness of thinking and uncertainty of decision." We quoted that section with approval in *Martin v. Turek,* 227 Ill. App. 379, and are of the opinion that what the author states is more or less applicable to other Latin phrases such as we have above mentioned.

The rule we have applied in construing the residuary clause is in accordance with the law as announced by our Supreme Court in many cases. Some of these cases are *Pitney v. Brown,* 44 Ill. 363; *McCartney v. Osburn,* 118 Ill. 403; *Richards v. Miller,* 62 Ill. 417; *Carlin v. Helm,* 331 Ill. 213; *Northern Trust Co. v. Wheeler,* 345 Ill. 182.

In the *Pitney* case the question was whether the will provided that a distribution should be made *per capita* and not *per stirpes.* The will provided: "The balance remaining of said fund I hereby direct shall be equally divided between the children of my late brother, Mahlon Pitney, and my brother-in-law, William H.

Brown, . . . a large portion of my property having been received through his father and the father of my late wife, Betsey H. Pitney.'' There were three children of Mahlon Pitney, and the question was whether the residue was to be divided one-half to Brown and the other hàlf to the three children, or whether it was to be divided equally among the four. The court held that it was to be divided equally among the four, and said (p. 366): ''The language is susceptible of either interpretation; and, if the question were a new one, it would be difficult of decision, though we are inclined to thing that equality *per stirpes* would be the more natural construction. But the point has so often been decided by the courts, both of England and of this country, that there is an established canon of interpretation in regard to these words, from whose authority we do not feel at liberty to depart. With a long line of precedents all pointing in one direction, and on a question of admitted doubt, it is our duty to follow the rule, even if questioning its soundness.

''The rule is thus stated by Jarman (vol. 2, p. 111): 'When a legacy is to the children of several persons, they take *per capita* and not *per stirpes*. The same rule applies when a bequest is made to a person, described as standing in a certain relation to the testator and to the children of another person, standing in the same relation; as, to my brother A and the children of my brother B, in which case A takes only a share equal to that of one of the children of B.' ''

In the *McCartney* case, *supra* (118 Ill. 403), the construction of a residuary clause of a will was involved. It provided that the residue was ''to be equally divided between the heirs of the said Henrietta that may be living at the time of said division, and the said Harry G. McCartney, each to share and share alike.'' Harry G. McCartney was an only child of the deceased, Jennie W. McCartney, and Henrietta was a sister of

the deceased who died leaving children surviving. The controversy was whether Harry G. McCartney was to receive one-half the residue and the surviving children of Henrietta the other half; or whether Harry G. Mc-Cartney and the surviving children should each receive equal parts of the residue. The court quoted the rule from Jarman on Wills which was referred to in the *Pitney* case, *supra,* and held that it should be divided *per capita.*

In the *Richards* case, *supra* (62 Ill. 417), the court adhered to the rule applied in the *Pitney* case, and on page 425 said: "The words, too, 'equally,' or 'share and share alike,' or 'to be equally divided,' import an intention. When they are used in a will they mean a division *per capita.*"

In the *Carlin* case, *supra* (331 Ill. 213), the will provided that the residue of the property should be divided equally between the testator's lawful heirs,—"I mean by my lawful heirs, my daughter Aura F. Hecox and her children, and grandson Harry B. Helm." At the death of the testator Aura F. Hecox had two children and Harry Helm had none. The court held the property should be divided into four equal shares among the four persons mentioned. A number of authorities are there discussed and the rule announced in the *Pitney* case adhered to.

· In *Northern Trust Co. v. Wheeler, supra* (345 Ill. 182), the trust company was trustee under the will. The trust company as trustee filed its bill praying for instructions as to the persons to whom the residuary estate should be distributed. The provision of the will which disposed of the residue of the estate is as follows: "I direct said trustee to turn over and distribute in equal parts to my brothers who may be living at the time of such distribution, and to the descendants of such of them (including descendants of my said brother, George Henry Wheeler) as may have died

leaving any descendant or descendants him or them surviving, the descendants of a deceased brother in each case to take *per capita* and not *per stirpes* the share to which such deceased brother would have been entitled if living.'' The question was whether all descendants of a deceased brother of whatever degree were entitled to an equal distribution *per capita,* or whether the rights of the descendants accrued *per stirpes.* The court, after reviewing some of the authorities said (p. 188): ''In this country the decisions of the courts of the different States are not in harmony.'' A number of authorities are then discussed, and continuing the court said (p. 191): ''What was the intention of the testator as expressed in the words of his will? When that intention is ascertained there is no room for presumption. If the language of the will indicates the intention of the testator that the living descendants of each of his brothers who should be dead at the time of distribution should take *per capita* and not *per stirpes,* that intention must be given effect. . . . The Illinois law favors such a construction of a devise to descendants as will cause the division among descendants *per stirpes* and not *per capita,* but it is the intention of the testator which must govern, and when his will directs that the descendants shall take the share to which the ancestor would be entitled if living, *per capita* and not *per stirpes,* we cannot say that the share shall be taken by the descendants *per stirpes* and not *per capita* or in part *per stirpes* and in part *per capita.*'' The court adhered to the rule announced in the *Pitney* case, and in referring to the case of *Proctor v. Lacy,* 263 Mass. 1, said: ''the direction that an estate be divided equally *per capita* is not consistent with but opposed to a division of the estate *per stirpes.*'' And on page 196: ''Counsel argue that nothing of any substantial nature is added to the words '*per capita*' by the addition of the words

'and not *per stirpes.*' Perhaps not, yet they seem to emphasize the intention of the testator.''

For the reasons stated, the decree of the superior court of Cook county is reversed and the cause remanded with directions to enter a decree dividing the residue into 19 equal parts, to be distributed one part to each of the seven living nephews and nieces; one part to each of the 10 children, and one part to each of the two grandchildren, as above mentioned.

The decree of the superior court of Cook county is reversed and the cause remanded with directions.

*Reversed and remanded with directions.*

McSurely, P. J., concurs.

Matchett, J.: I concur in the result.