Continental Illinois National Bank and Trust Company of Chicago, Trustee under Last Will and Testament of Emery H. Fahrney, Deceased, Appellee, v. Marion Hills Hardeen et al., Appellees and Merry Fahrney, Appellee and Cross Appellant, and Peter Fahrney, Minor, by Maclay Hoyne, Guardian ad Litem, Appellant.

Gen. No. 40,957.

Opinion filed June 24, 1940.   Rehearing denied July 8, 1940.

MACLAY HOYNE and JOHN E. FOSTER, both of Chicago, for appellant; MACLAY HOYNE and JOHN E. FOSTER, of counsel.

POPPENHUSEN, JOHNSTON, THOMPSON & RAYMOND and FRANK E. CANTWELL, all of Chicago, for certain appellee; FLOYD E. THOMPSON and ALBERT E. JENNER, JR., of Chicago, of counsel.

DEFREES, BUCKINGHAM, JONES & HOFFMAN, of Chicago, for certain other appellee; DON KENNETH JONES and KENNETH M. FISKE, of Chicago, of counsel.

KIRKLAND, FLEMING, GREEN, MARTIN & ELLIS, of Chicago, for certain other appellee; JAY FRED REEVE and WILLIAM H. SYMMES, both of Chicago, of counsel.

HARRY H. TALCOTT, of Chicago, for certain other appellee; HARRY H. TALCOTT, of counsel.

MR. JUSTICE McSURELY delivered the opinion of the court.

Plaintiff filed its complaint asking for the construction of the will of Emery H. Fahrney, deceased, with special reference to whether Peter Fahrney, a minor, the adopted son of the testator, was entitled to receive the income from the residuary trust created by the will as if he were a natural child born to the testator, and whether the life of Peter Fahrney is to be considered in computing the time of the termination of the trust; answers were filed by the interested parties, evidence was submitted, and Maclay Hoyne was appointed guardian ad litem for Peter Fahrney; subsequently Mr. Hoyne died and John E. Foster was appointed in his stead; after hearing the chancellor decreed that Peter Fahrney was not entitled to receive the income from the trust as though he were a natural son of the testator, and that he should not be considered as a natural son in

computing the time of the trust. Peter Fahrney has appealed from this decree. The complaint also raised the question as to the allowances for attorneys' fees and costs. The chancellor took evidence on this question and made certain findings, and certain allowances are questioned.

Emery H. Fahrney, residing in Oak Park, Illinois, died October 7, 1935, leaving him surviving his wife, Marion Fahrney, and his two daughters, Myrtle Fahrney Seamann and Merry Fahrney Pickering; also a grandson, Peter Fahrney, the son of his daughter Mrs. Pickering, and a granddaughter, Myrtle Seamann, the daughter of Mrs. Seamann; he left a will dated June 2, 1926; a codicil was executed dated April 9, 1932; October 27, 1933, Emery H. Fahrney and his wife Marion, by legal proceedings, adopted Peter, the minor child of Mrs. Pickering, who took the name of Peter Fahrney. In the petition for adoption Emery H. Fahrney and his wife stated that they desired to ''rear, nourish and educate said child as their own child and to adopt him as their legal heir.'' On the same day, October 27, 1933, the last of the two codicils to the Fahrney will was executed, at which time the testator had an estate of over $2,500,000.

Emery H. Fahrney having died October 7, 1935, the will and codicils were admitted to probate December 5, 1935.

Counsel for Merry Fahrney Pickering, the mother of the child Peter, questions the validity of this adoption, but the chancellor, on her motion, entered an order without objection of the parties, that the consideration and determination of the validity of the adoption proceedings should be reserved for later consideration, should such adjudication become necessary to the decision of the case. It therefore will be assumed that Peter Fahrney is the adopted son of the testator.

Paragraph Fifth of the will created a trust fund, naming Continental Illinois National Bank and Trust

Company of Chicago, plaintiff, as trustee; subparagraph (a) of paragraph Seventh provides that the net income of the trust estate shall at certain specified times each year "be paid to my then surviving lawful issue *per stirpes*"; subparagraph (d) provides that "The trust hereby created shall continue until the death of my wife and until twenty years shall have elapsed after the death of the survivor of my wife and my children, and shall then terminate; provided, however, that the trust shall terminate at any time before then when neither my wife nor any lawful issue of mine shall survive. Upon the termination of the trust the principal of the entire trust estate and the unpaid net income therefrom shall thereupon go to, vest in, and be paid, transferred and delivered to my then surviving lawful issue, *per stirpes*. In case no lawful issue of mine shall then survive, such principal and unpaid income shall go to, vest in, and be paid, transferred and delivered to the then surviving of my niece, Elsie Louise Vette, and nephews, Walter F. Beachy and Harold P. Beachy, provided that the then surviving lawful issue of any deceased such niece or nephew of mine (whether he or she shall have died before or after my death) shall be paid and receive *per stirpes* the share of such trust estate which such deceased niece or nephew would have been entitled to receive if then living." It is unnecessary to discuss the provisions of the will respecting the wife because she has renounced them.

The first codicil of the will is not involved. The second and last codicil, executed on the day of the adoption of Peter Fahrney, recites: "Having adopted Peter Fahrney Pickering, son of Mary Fahrney Pickering and Hugh Parker Pickering, As MY LEGAL Child, said child to be hereafter known as Peter Fahrney, I hereby make the following provisions for him: . . ." $50,-000 was given to plaintiff, the income to be used to maintain, educate and support Peter Fahrney until he attains the legal age of 21, and when he attains this age

the principal of this $50,000 trust and the accumulations thereof are to be paid and transferred to him; if he should die before attaining the age of 21 the trust shall cease and the principal and accumulations shall be paid over to the trustees under the will and distributed according to its terms.

Does Peter Fahrney come within the provisions of subparagraph (a) of paragraph Seventh, which provides that after the death of the wife the net income shall be paid "to my then surviving lawful issue *per stirpes*," or the further provision in subparagraph (d), paragraph Seventh, which provides that the trust shall terminate "when neither my wife nor any lawful issue of mine shall survive."

A beneficiary under a will, regardless of his relationship to the testator, is entitled to what the will gives him and nothing more. The intention of the testator as expressed in his will must govern. Is there anything in the language of the will which includes the adopted son as a beneficiary, entitled to receive the same income as his mother and his aunt? The guardian ad litem cites *Flannigan v. Howard*, 200 Ill. 396, as holding that an adopted child is entitled to all the rights of a natural child under the statute of descent. That case holds that when a child is adopted after the making of a will, the effect in law is precisely the same as the birth of a child after the making of a will. In the instant case Peter Fahrney was adopted before the making of the last codicil, hence the testator had the right to disinherit even a natural child. It should be noted that this last codicil, after making provision for the $50,000 trust for the benefit of Peter Fahrney, specifically confirms the original will of June 2, 1926. *Munie v. Gruenewald*, 289 Ill. 468, can be distinguished from the case at bar. There the will provided that the remainder should be divided among testator's children and if any of these should die before the termination of the life estate the share that would fall to such child should go to his or

her children; a daughter died leaving no children of her body but leaving an adopted child. The court held that the word "children" was intended by the testator to include this adopted child, which had been adopted several years before the will was executed and had lived with the family of the testator and was considered by him and the rest of the family as one of his grandchildren. In the instant case, on the date of the will, June 2, 1926, the two children of the testator's body were then unmarried and when the testator used the words "surviving lawful issue" he did so having in mind the ordinary meaning of such words and certainly not the unusual possibility that he would adopt one of his prospective grandchildren. Moreover, after the adoption the testator by an added codicil created a special trust fund for the benefit of the adopted son, Peter Fahrney, which would indicate that he did not intend that the adopted son should be included in the term "lawful issue."

March 28, 1934, the testator executed a trust agreement with the First Wisconsin Trust Company, a corporation located at Milwaukee, Wisconsin, by which he turned over bonds of the face value of $1,000,000 to be held in trust. The agreement provided that on certain fixed dates each year, as long as he lived, the settlor should be paid the net income from this fund; that upon his death a third of the net income should be paid to the wife if living, but if she be not living, then in equal shares to such of the following persons as shall then be living, namely, his daughters Merry and Myrtle, and his adopted son Peter. The creation of this Wisconsin trust throws no light upon the intention of the testator with reference to the creation of the trust in his will. The Wisconsin agreement clearly expressed the intention that Peter was to share equally in that trust with his mother and his aunt. If the testator intended that Peter should have a like share under the will he could have said so in equally clear language at the time of

the drafting of the last codicil. This codicil makes the only specific reference to him that appears in the will and codicils, and the language used makes it clear that the provision there made is the only benefit the adopted son is to receive under the will and codicils.

The guardian ad litem suggests that the other beneficiaries under the Emery H. Fahrney will by consenting to the adoption are estopped to deny that Peter Fahrney is entitled to share equally with his mother and his aunt in the income of the trust. The adoption of Peter did not estop the testator to make such disposition of his property by will as he might wish to make. The fact that his daughter Merry consented to the adoption of her son Peter, and that the other daughter Myrtle, was apparently pleased with this, could not limit the right of the testator to make any disposition of his property he chose to make. Moreover, paragraph Tenth of the will renders void any contract of the beneficiaries which attempts to dispose of their interests under the will.

A further consideration against the contention of the guardian ad litem is that the testator would hardly have so discriminated against his granddaughter, the daughter of Myrtle, in favor of his grandson Peter, the son of Merry. Why should he give Peter an income for life on a third of his estate and provide that he should take outright a third of the corpus of the estate as the descendant of his mother Merry, and then make no provision for his granddaughter Myrtle, except that she should take a third as the descendant of her mother, testator's daughter Myrtle?

In *Wyeth v. Crane,* 342 Ill. 545, is a discussion of the effect of the words "issue" or "descendants," and it was held that while there was a diversity of opinion, the correct rule in this State is that where a gift is made to "descendants" or "issue," children do not take concurrently or per capita with their living parents but take *per stirpes.* In *Northern Trust Co. v. Wheeler,*

345 Ill. 182, 191, "issue" was defined to include all persons who proceeded from the body of the person named, and it was said that "The Illinois law favors such a construction of a devise to descendants as will cause the division among descendants *per stirpes* and not *per capita,*" but if it is shown that the intention of the testator is that the descendants shall take *per capita* and not *per stirpes,* this intention must be given effect as the courts have no right to make a new will for the testator. In *Miller v. Wick,* 311 Ill. 269, the question was whether an adopted child satisfied the condition "or until such time in his life as he shall have a child, his lawful issue, who shall attain unto the age of three years." It was held that the words "lawful issue" mean a child issuing in lawful wedlock or the words were meaningless. This applies to the instant case. The language of the will of June 2, 1926, executed before Peter Fahrney Pickering was born, clearly limited the benefits of the income of the trust to the wife and the two daughters. When the testator adopted Peter he changed his will by adding the last codicil by which he made provision for the adopted son and, as we have said included in the codicil the provision that his will of June 2, 1926, shall remain in full force and effect except as expressly changed by the codicil, thus leaving unchanged the language of his will giving the benefits of the income to his "then surviving lawful issue *per stirpes.*" *Hale v. Hale,* 237 Ill. App. 410, is another case in point, and many cases from other States might be cited.

The chancellor properly held that Peter Fahrney, the adopted son, was not entitled to receive the income from the residuary trust created by the will as if he were a child born to the testator. It is also equally clear that the testator intended to describe by the words "my children" or "lawful issue of mine," as used in paragraph Seventh (d) of his will, the lives which should measure the time when the trust should terminate. He

named his wife and two children in this will and could have had only them in mind when he provided that their lives should determine the period of the trust. Peter, the adopted son, was not yet born and there is nothing to indicate that the testator contemplated at that time ever to adopt any child.

The chancellor allowed to the plaintiff, Continental bank, for its services as trustee, $1,550; found that plaintiff will have to pay its attorneys' fees, amounting to $7,500, and that such fees are reasonable and customary charges for the services rendered. The court found that the Harris Trust & Savings Bank had been appointed as conservator of the estate of Myrtle Fahrney, insane, and it was allowed $7,500 as attorneys' fees. Marion Hills Hardeen, formerly Marion Fahrney, wife of the testator, was allowed $1,500 for attorneys' fees, and the guardian ad litem for Myrtle Fahrney Seamann, a minor defendant, was allowed $2,500. The attorneys for Merry Fahrney were allowed $7,500. Maclay Hoyne, guardian ad litem of Peter Fahrney, asked to be allowed $15,000; the chancellor was of the opinion this was too much but that he was entitled to something more than the other parties, and allowed him $8,500.

The chancellor in making these allowances went into the services performed carefully. While, possibly, we might not agree as to every item, we see no reason to conclude that the allowances were unreasonable. The chancellor was a man of experience and was acquainted with the character and amount of the services rendered in this litigation. We see no reason to disagree with his conclusions and his judgment as to the propriety of these allowances will remain undisturbed.

Upon the entire record we are of the opinion that there is no reversible error appearing in the decree and it is affirmed.

*Decree affirmed.*

MATCHETT, P. J., and O'CONNOR, J., concur.