CLEVELAND TRUST COMPANY, Plaintiff, v. JOHNSON, Jr. et, Defendants.

Probate Court, Cuyahoga County.

No. 477138.

Alfred M. Rankin, Thompson, Hine & Flory, of Counsel, Cleveland, for plaintiff.

James C. Weir, J. Hall Kellogg, Hauxhurst, Inglis, Sharp & Cull, of Counsel, Cleveland, for certain minor defendants.

Douglas F. Schofield, Gorman, Arthur & Schofield, of Counsel, Cleveland, for minor defendant, William J. Cleveland.

Walker H. Nye, Alyn A. Benson, Arter, Hadden, Wykoff & Van Duzer, of Counsel, Cleveland, for defendants, Malcolm B. Johnson, Jr., Edward L. Johnson.

David L. Johnson, Jr., John T. Scott, M. B. & H. H. Johnson, of Counsel, Cleveland, for certain defendants.

Howard F. Burns, Baker, Hostetler & Patterson, of Counsel, Cleveland, for defendants, Priscilla J. Ide, Jacqueline J. Cleveland and Mary J. Transue.

## OPINION

By KINDER, J.

The Cleveland Trust Company as Successor Trustee under the will of Mary L. Johnson, brings this action for a declaratory judgment to construe certain provisions of such will and to determine questions said to exist as to the proper distribution of the trust estate thereby created.

The matter was heard by my predecessor, Judge Brewer, without final determination and is now before me upon a re-hearing or re-argument granted by him prior to his resignation.

Factually the case rests on testimony taken and exhibits offered at a hearing before Judge Brewer on April 9, 1953, a Stipulation of Facts (Court's Exhibit 1) and certain additional testimony taken before me on December 21, 1953.

The case turns on the meaning and effect to be given to the last paragraph of Item VI of the will, which is as follows:

"Upon the death of the last survivor of my two sons above-named, this trust shall cease and determine and the entire amount of the principal thereof, together with all accumulations of income, shall be paid over by the Trustee to the then living issue of my children, including the issue of my deceased son, Malcolm B. Johnson, per capita and not per stirpes."

David L. Johnson, the survivor of the testatrix's two sons, died on October 7, 1951, and the estate became distributable. On that date there were living ten grandchildren and sixteen great-grandchildren of the testatrix. In this latter group is included William J. Cleveland, conceived prior to October 7, 1951, but born on November 23, 1951.

The question presented is: Under the provision quoted shall the dis-

tribution of this estate—said to approximate in value the sum of one million dollars—be confined to the grandchildren per capita or shall such distribution be made per capita to the grandchildren and great-grand-children?

The case has been thoroughly briefed and ably argued.

Counsel for the grandchildren invite me to hold that under the clause in question, distribution should be confined to the then—October 7, 1951—living children of the children of the testatrix, that is to say, to her grandchildren per capita. The argument proceeds upon the premise that the word "issue" is not a word of art or exactitude in legal meaning, but on the contrary has been held in many cases to have a variety of meanings. It is thereupon concluded that the situation of the testatrix at the time of the execution of the will on February 22, 1932, particularly the place and circumstances under which the will was prepared, the fact that at that time there were ten living children and no great-grandchildren and the consequences which would flow from a contrary construction, demonstrate that it could not have been the intent of the testatrix that the distribution of her estate should go beyond her grandchildren, that is to say, that the phrase "to the then living issue of my children, including the issue of my deceased son, Malcolm B. Johnson per capita and not per stirpes" means only the grandchildren of the testatrix. But this is not what the clause says—at least not in words—and the rule seems clear that the words employed in the will should be given their commonly accepted meaning unless the context of the will otherwise indicates that the testatrix employed them in another or different sense. But here again, I fail to find from a study of the provisions of the will otherwise, any indication that the phrase "the then living issue of my children * * * per capita and not per stirpes" is to be given any other or different meaning than that commonly and usually assigned to the phrase or the words used in making up the phrase.

It seems clear to the Court that the problem thus defined must be solved by ascertaining the meaning to be attributed to this phrase under the law of Ohio as it stood at the time of the execution of the will on February 22, 1932. I think this is so because of the circumstances surrounding the preparation and execution of this will and which under the authorities I am at liberty to consider. **Pruden v. Pruden, 14 Oh St 251, 256.**

Mrs. Johnson was the widow of a distinguished lawyer, who in his lifetime (Mr. Johnson died in 1920) was a member of the law firm of M. B. and H. H. Johnson. Her son, David L. Johnson, was likewise, until his death on October 7, 1951, a member of this firm and an able and experienced lawyer in his own right. It was David L. Johnson who prepared his mother's will (Jean Raynor Johnson, Trans. p. 14).

Certain assumptions may be made here. Among other matters, it must have been that the nature and extent of Mrs. Johnson's estate, the number and identity of her grandchildren, their ages, their characteristics and the fact that at that time (1932) one son, Malcolm B. Johnson, predeceased

her, were all the subject of discussion between the testatrix and her son. This would necessarily occur in the process of the formulation of her wishes with respect to the ultimate distribution of her estate. Here it must be assumed that the will prepared by the son was so drawn as to express the intent and carry out the wish of the mother.

Again, it must be assumed that the testatrix was familiar with the terms and the general effect, not only of her husband's will, but also of the existence of the so-called Darmack Trust. In this connection, for example, the similarity of expression and, in part, of the content. between the will of her husband and that of the testatrix seems to me to establish, without question, that the will of the former must have been considered in the preparation of the latter. Likewise, I regard as significant that while the distribution provided for in the husband's will and likewise in the Darmack Trust was per stirpes, the testatrix in her will provided for a per capita and not per stirpes distribution.

These documents have been considered by me only as a part of the background against which David Johnson used the phrase "then living issue of my children" as appropriate to carry out his mother's wishes and intent. It has been urged upon me by counsel for the great-grandchildren that the nature and extent of the distribution effected under the M. B. Johnson will and the Darmack Trust should be considered as a matter of background and possessing evidentiary value in any determination of the meaning of the phrase under dispute. I do not agree and have not accorded any weight to these considerations in coming to a conclusion as to the matter of intent, nor do I regard as of any weight the argument advanced from an inheritance tax standpoint.

I find that under the rule in Ohio when this will was drawn, the word "issue" had a broad meaning and in the absence of words of qualification it included children, great-grandchildren and all degrees of descendants. **Watson v. Watson, 34 Oh Ap 311 (1929); Coehrel v. Robinson, 113 Oh St 526, 533 (1925).** And I find nothing in any relevant decision since 1932 to qualify these cases. **Welles v. Pape, 63 Oh Ap 432.** I do not consider **The Cleveland Trust Company v. Hart, 82 Oh Ap 450,** to be to the contrary.

The great weight of authority outside of Ohio is to the same effect. Mazziotte v. Trust Co., 180 Md. Rep. 48, 23 A. (2nd) 4. Northern Trust Co., v. Wheeler, 345 Ill., 182, 177 N. E. 884; Schmidt v. Jewett, 195 N. Y., 486, 88 N. E. 1110; Ridley v. McPherson, 100 Tenn., 402, 43 S. W. 772.

This being the rule I am compelled to assume that David Johnson, conscious of his mother's wish and intent, made use of this phrase in its declared meaning, and hence I reach the conclusion that under the last paragraph of Item IV of the will, distribution of this estate should be made not only to the grandchildren, but also to the great-grandchildren living on October 7, 1951, and in which latter group I hold that William J. Cleveland, conceived but not born until after the above date, to be included.

In reaching the conclusion above expressed, I have considered the

arguments advanced on behalf of the grandchildren that this construction of the will would, in view of the per capita distribution provided for in the will, have a result which the testatrix under all the circumstances could not have intended. It is further urged in this general connection that such construction would result in the great-grandchildren sharing equally in distribution with their respective parents, a result said not to be favored in the law. However, this sort of result is inherent in a distribution per capita. **Mooney v. Purpus, 70 Oh St 57; Huston v. Crook, 38 Oh St 328.**

It seems to me that the following observation of the Court in Hobbs v. Tuthill, 1, I. R. (Ch. Div.) 115, (1895) applies here:

"If it is difficult to suppose that a settlor would wish to provide equally for grandchildren and for his own children, **per capita**, it is equally difficult to suppose that he would desire to exclude grandchildren altogether, their parents being dead, whether he had or had not children to take under the trust; and it is to be remarked that this singular instrument contains no power of appointment, selection, or distribution whatever. (Page 121.)

And again:

"It is true that in the present and in other cases this view, which gives to issue its normal meaning in settlements as well as in other assurances, may cause unexpected and **prima facie** improbable developments to follow: grandchildren taking equally with children, even with their own parents, per capita. A settlement, however, cannot be construed by the events which subsequently occur. Its meaning must be gathered from its language, as it would be interpreted immediately after its execution.

"But the alternative construction would lead to results equally, or more, unexpected and incongruous. To restrict issue to children would lead to the result that if the married couple survived their children, but left grandchildren, however numerous, there would be no provision whatever for them—a result which could not possibly have been intended. * * *" (Pg. 129.)

Responding therefore, to the two questions propounded by The Cleveland Trust Company, Successor Trustee, in paragraph 15, page 6, of the petition, the Court holds that:

(1) The words "then living issue of my children" appearing in the last paragraph of Item IV of the will of Mary L. Johnson, evidence the intent of the testatrix to include as distributees of the trust property her grandchildren and great-grandchildren living at the death of David L. Johnson on October 7, 1951, and that such distribution shall be made per capita among said grandchildren and great-grandchildren.

(2) That William J. Cleveland, a great-grandchild of the testatrix, conceived but unborn on October 7, 1951, shall be included among the distributees.

As has been heretofore indicated, the case rests on (a) testimony taken and exhibits offered at the hearing before Judge Brewer on April 9, 1953, (b) the Stipulation of Facts (Court's Exhibit 1) and (c) certain testimony taken and exhibits offered before me on December 21, 1953.

The Stipulation of Facts contained reservations by the parties of objections to certain of the stipulated facts on grounds of lack of materiality and relevancy. While the opinion herein indicates the weight and effect which the Court gave or failed to give to certain of the facts stipulated, the parties are entitled to a specific ruling on the various objections reserved by counsel and I now turn my attention to these matters, to-wit:

The Court gave effect to, and therefore admitted, the facts stipulated in paragraphs one, two, three and four. As to Paragraph Five, the Court admitted the first and last sentence of the first paragraph thereof, but does not find the facts set forth in the second sentence thereof as relevant or material.

The Court does not find as relevant or material the facts set forth in the second and third paragraphs, Section 5.

The Court considered as relevant the existence of the Darmack Trust, so-called, and that the testatrix was familiar with the existence thereof. With these exceptions, the Court finds that the remainder of the facts set forth in Paragraph Six are without relevancy and materiality. The Court likewise regards the allegations in Paragraph Seven as to be without relevancy and materiality.

The Court considered admissible the facts appearing in Paragraph Eight.

The foregoing specific rulings plus those indicated in the opinion of the Court, take care, I think, of any questions raised at the hearing before Judge Brewer on April 9, 1953, and questions raised before me at the hearing on December 21, 1953, except my ruling sustaining an objection to the admissibility of a legal memorandum under the legend "memorandum on distribution of trust principal, December 20, 1951," and bearing the initials "J. T. S., Jr." (Trans. of testimony of David L. Johnson per pg. 8.) To this ruling I adhere. The only other ruling relates to the proffered testimony of Jean Raynor Johnson (Trans. pp. 9, 10), as follows:

"Q. Mrs. Johnson, you have testified that you did not hear Mary Johnson make certain statements relative to the disposition of her estate. Will you tell the court what the statements were, or what the statement was, that you heard?

"A. Well, from time to time I heard her say that she wanted her boys—she always called them her boys—to enjoy the income, as long as they lived, from her estate, and at the death of the last son she wanted her money equally divided among her grandchildren. She never mentioned anything pertaining to great-grandchildren at all.

"THE COURT: I think the latter part may go out. She wanted her sons to have the income.

"THE WITNESS: Enjoy the income.

"THE COURT: Enjoy the income, and upon their death it should go to the grandchildren.

"THE WITNESS: The principal—on her death, the principal was to be divided equally among her grandchildren."

The Court accepted this testimony subject to a subsequent ruling as to its admissibility. The record may show that objection to these questions and the admission of these answers is sustained and therefore the Court gave no effect to such evidence in determining the intent of the testatrix as expressed in Item IV of her will.

Conclusion:

A decree may be entered in accordance with the foregoing opinion and rulings and due exceptions are allowed to the parties feeling themselves aggrieved thereby.